## Richmond

WILLIAM LEE ROBINSON

V.

COMMONWEALTH OF VIRGINIA

Record No. 831335.

November 30, 1984.

Present: All the Justices.

*Sa'ad El-Amin (Sa'ad El-Amin & Associates,* on briefs), for appellant.

*Robert Q. Harris, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

■ William Lee Robinson was convicted of first degree murder and the use of a firearm in the commission of a felony. He was sentenced to 40 years on the murder conviction and 2 years for use of the firearm. Robinson appeals his conviction on due process grounds and on the ground that the trial court admitted rebuttal evidence that was collateral and otherwise improper. Robinson's due process argument was not preserved below; therefore, it will not be considered here. Rule 5:21.

Robinson was convicted of the murder of Bobby Harris. On Saturday, October 23, 1982, at approximately 1:30 a.m., Harris' niece saw her uncle leave his apartment on W. Baker Street in Richmond. She watched Harris step from the front porch of the building and walk down the street. She observed a man call to Harris. She saw Harris point to the apartment. She watched as her uncle continued walking. Then, she heard four shots. She watched her uncle turn and struggle with his assailant. She heard two more shots. She saw the assailant run away. She saw Harris limp back to the apartment building. Harris died from his wounds. Harris' niece identified Robinson as her uncle's killer.

Robinson was arrested in December 1982. At the time of his arrest, Robinson had a .22 caliber six-shot pistol in his possession.

Four bullets were removed from Harris' body. A forensic scientist examined the pistol seized from Robinson along with the bullets taken from Harris' body. The scientist concluded that the bullets could have been fired from the pistol.

The Commonwealth established through a rebuttal witness that several hours before the shooting Robinson sought to buy drugs. However, at that time he did not have enough money. But according to the witness, Robinson announced that though he did not have enough money at that moment, he had a job to do and would have the money before the weekend was over. In addition, the witness identified the pistol seized during Robinson's arrest as the one Robinson was carrying several hours before the shooting.

Through another rebuttal witness, the Commonwealth established a connection between Robinson and a man against whom the decedent was scheduled to testify. Harris had been set to testify in a drug trial that was scheduled to begin a few days after Harris was killed. Robinson complains, on appeal, that this last testimony was collateral and improper.

The testimony about which Robinson complains arose in the following manner: While Robinson was on the witness stand testifying in his own behalf, he was asked whether he knew a man named Harvey Potts. He replied, "Harvey Potts? I know a Harvey Potts, Jr." Robinson denied knowing Harvey Potts, Sr. Robinson denied knowing of any problem between the decedent and Harvey Potts, Sr. Robinson denied knowing that Harris was scheduled to testify in a drug trial against Potts. Robinson denied that Potts had asked him to kill Harris. Finally, Robinson denied killing Harris.

On rebuttal, the Commonwealth called Detective D. R. Carter who testified that he had seen Harvey Potts, Sr., and Robinson together approximately three times in the twelve months prior to Robinson's trial — a time period which extended back seven months prior to the shooting. Carter also testified that Harris had been scheduled to testify against Potts, Sr.

Robinson complains that the questions concerning his knowledge of Harvey Potts, Sr., were collateral and that, as a result, his answers were conclusive and the testimony of Detective Carter on rebuttal was improper. We disagree.

The questions concerning Robinson's knowledge of Potts were not collateral. "The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case." *Allen* v. *Commonwealth*, 122 Va. 834, 842, 94 S.E. 783, 786 (1918). The questions concerning Potts were aimed at establishing Robinson's motive for killing Harris. And though the Commonwealth was not required to prove motive as an element of the crime of murder, such proof was relevant to establish defendant's intent. *Smith* v. *Commonwealth*, 220 Va. 696, 702, 261 S.E.2d 550, 554 (1980). In sum, the Commonwealth could have proved motive in support of its case; therefore, the questions concerning Potts were not collateral. Since the questions addressed to Robinson were not collateral, his answers were

not conclusive, and the Commonwealth had the right to rebut defendant's assertions.

In a second argument, Robinson contends that even if the questions concerning Potts were not collateral, the detective's testimony concerning motive should not have been admitted. According to Robinson, the motive testimony would have been admissible only if the Commonwealth had first proved that prior to Harris' death, Robinson *probably knew* that Harris was scheduled to testify against Potts. In support of this argument Robinson relies upon *Mullins' Case*, 113 Va. 787, 75 S.E. 193 (1912), where we stated as follows concerning proof of motive:

> [B]efore a fact or circumstance is admissible in evidence against a party to show motive, such fact or circumstance must be shown to have probably been known to him, otherwise it could not have influenced him, for a man cannot be influenced or moved to act by a fact or circumstance of which he is ignorant.

*Id.* at 789-790, 75 S.E. at 195.

Robinson points to the correct test, but to no avail. The evidence here was sufficient to establish that he probably knew that Harris was scheduled to testify against Potts and that Potts did not want this to occur. Robinson denied knowing Potts, Sr. Yet, he was seen with him on several occasions prior to Harris' murder. The day of Harris' murder was only four days before Potts' trial. Several hours before the murder, Robinson was seen carrying a six-shot pistol which he claimed he did not acquire until long after the murder. While carrying the pistol, he indicated that he expected to receive money from a job he had to do. Even though there was no evidence that Robinson had known Harris before the shooting, at the time of the shooting, Robinson was able to identify Harris on the street as his target. This suggests that someone had "fingered" Harris for Robinson.

In light of the foregoing, we will affirm the judgment of the trial court.

*Affirmed.*