**Salem**

JOSEPH CARRINGTON CALLAHAN, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 0867-87-3

Decided May 2, 1989

COUNSEL

Thomas L. Phillips, Jr. (Phillips, Phillips and Phillips, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (May Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Joseph Carrington Callahan, Jr. appeals his convictions for arson and the willful destruction of personal property.

Callahan contends: (1) the trial court erred in allowing a deputy fire marshal to testify that the fire was incendiary; (2) the trial court erred in admitting evidence of Callahan's past violent acts against his wife and daughter; and (3) the trial court erred by permitting the Commonwealth's attorney to request in closing argument that the jury consider Callahan's past mistreatment of his wife in determining sentence. We find that the trial court erred by permitting the deputy fire marshal to testify that the fire was incendiary and due to the prejudice caused by such error we reverse and remand the case for a new trial.

Joseph Callahan, Jr. was charged with assaulting his wife, Frances Callahan, the willful destruction of her personal property, and arson of the family's home. Evidence chronicling the history of the parties' turbulent marriage showed that for twenty-four years, during which three daughters were born, the defendant had been violent toward Frances Callahan and their children. Frances Callahan testified, over objection, that on the evening of June 28, 1986, the defendant struck her in the face and caused a cut which required fifteen stitches. She stated that he choked their twenty-one year old daughter, Renee, when she attempted to telephone for help. Renee's testimony substantiated these events. Frances Callahan testified that the severity of this assault prompted her to get a court order enjoining the defendant from coming around her, their children, or their house. She testified that, despite the injunction, the defendant continued to telephone and threaten her. In September 1986, he drove his automobile into the side of their house causing $3,000 damage.

On February 8, 1987, the defendant came to the house. Their seven year old daughter allowed him to enter. When Frances Callahan saw him she requested that he leave. The defendant refused and then physically attacked her. When she attempted to flee with her daughter, the defendant seized her and forced her back into the house. When the defendant began breaking items in the house, Frances was able to escape by running to a neighbor's home, where she called the sheriff's office.

When the sheriff's deputies arrived they saw smoke coming from the house. The defendant, who was the lone occupant of the house, refused the deputies' demands to come out. At one point he told a deputy that "he had set it on fire and he was going to burn up with it." The deputies finally forced him out of the house by

using tear gas.

A deputy fire marshal for the City of Lynchburg who investigated the fire was qualified at trial as an expert and testified for the Commonwealth. He explained his investigation and observations at the fire scene. When asked by the Commonwealth's attorney about his opinion of the cause of the fire, he testified over objection that "based on the lack of accidental ignition sources in the area where the fire started and the fact that we had two separate points in which the fire started I consider this fire to be incendiary." When asked to define "incendiary" he said, "It means that the fire was deliberately set."

The defendant testified that on the day of the fire he had gone to the house to get insurance papers which he needed to be admitted to the hospital that evening. He admitted that he became angry when his wife would not speak to him and began smashing things. He denied assaulting her or setting fire to the house.

During the Commonwealth attorney's rebuttal argument, he asked the jury to consider in fixing his punishment the twenty-four years of "hell" the defendant had put his wife through. The defendant objected to the remarks, but the trial court commented that the remarks were appropriate and overruled the objection. The jury returned guilty verdicts for arson and willful destruction of personal property but found him not guilty of assaulting his wife.

 In general, a witness who by education, training or experience has knowledge beyond that of most lay men, may be qualified before the court as an expert witness and allowed to state an opinion to the factfinder on matters not within their common knowledge or experience. Conversely,

> [e]xpert testimony concerning matters of common knowledge or matters as to which the jury are as competent to form an opinion as the witness is inadmissible. Where the facts and circumstances shown in evidence are such that men of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions therefrom, the opinion of an expert based upon such facts and circumstances is inadmissible.

*Coppola v. Commonwealth*, 220 Va. 243, 252, 257 S.E.2d 797, 803-04 (1979), *cert. denied*, 444 U.S. 1103 (1980). *See also Patterson v. Commonwealth*, 3 Va. App. 1, 10, 348 S.E.2d 285, 290 (1986). The issue in this case is whether the source of a fire is a matter as to which the jurors are as competent to form an opinion as an expert.

■ In Virginia, well established precedent resolves the dispute. In *Ramsey v. Commonwealth*, 200 Va. 245, 105 S.E.2d 155 (1958), the Virginia Supreme Court specifically considered whether a witness qualified as an arson expert could render an opinion on the incendiary origin of a fire. In *Ramsey*, the arson expert was asked a hypothetical question, which assumed all the proven facts, about his opinion on the origin of the fire. *Id.* at 248-49, 105 S.E.2d at 157-58. The expert responded:

> Considering the accidental causes, which we felt were eliminated as the causes of this fire, coupled with our experience and the unusual circumstances that transpired shortly prior to this fire, several days before, the night of the fire and two or three days after the fire, and when all matters were considered together I reached the conclusion that we had an incendiary fire.

*Id.* at 249, 105 S.E.2d at 158. The Virginia Supreme Court held that the expert opinion testimony was inadmissible because it invaded the province of the jury by rendering an opinion on the ultimate issue to be decided in an arson case. *Id.* at 251, 105 S.E.2d at 159. The decision was not based upon the notion that the arson expert is not competent or qualified to form an opinion from the facts that a fire was intentionally set; rather the court stated that an arson expert should not be permitted to give an opinion to the jury or factfinder as to the cause or origin of the fire in such a manner as to say that a person set the fire deliberately or intentionally. The witness may detail the facts and observations which came to his attention while investigating the fire and may give his or her conclusions or opinions on such matters as where the fire started, the cause or source of ignition, how it proceeded, and whether and why certain accidental causes can be eliminated. However, the court must "permit the jurors to draw their own conclusions as to the cause" of the fire. *Id.* at 250, 105 S.E.2d at 159 (citing Curtis, *The Law of Arson, Evidence; Opinions* § 422,

pp. 441, 442).

The Commonwealth notes that the view expressed in *Ramsey* is a minority position, *see* A. Moenssens, F. Inbau & J. Starrs, *Scientific Evidence in Criminal Cases* § 3.21 (3d ed. 1986), and urges that we adopt the majority view that permits arson experts to give an opinion that a fire was incendiary. We decline the invitation. The *Ramsey* decision is the law of the Commonwealth until modified by the Supreme Court of Virginia or the General Assembly. The trial court as well as this Court are bound by that decision. Moreover, we believe that the view expressed in *Ramsey* is sound. In an arson investigation the facts are such that an expert can never exclude the possibility that a fire was of accidental origin. In the usual case, the arson expert will be able to conclude that a fire had the appearance of being accidental, but can rarely if ever exclude the possibility that an incendiary fire was made to appear accidental. Therefore, we believe that the *Ramsey* approach is sound because it places both the defendant and the Commonwealth on an equal footing as to the limits of the opinion that can be obtained from the expert witness. *See People v. Vincek*, 75 A.D.2d 412, 429 N.Y.S.2d 928 (1980); *Hughes v. State*, 412 So. 2d 296 (Ala. Cr. App. 1982). Thus, we hold that the deputy fire marshal's opinion that the fire was incendiary or deliberately set was inadmissible.

While "the admission of expert opinion may be harmless when other evidence of guilt is overwhelming," *Bond v. Commonwealth*, 226 Va. 534, 539, 311 S.E.2d 769, 772 (1984), after reviewing the record we find that "[w]hile the other evidence amply supports the jury's verdicts, the disputed testimony may well have affected the jury's decision . . . [and] was prejudicial to the defendant." *Cartera v. Commonwealth*, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978). When an opinion is rendered by a witness whom the trial court has declared to be an expert in his field, such opinion will carry great weight with the jury and could very well have been the decisive factor in their minds in determining the defendant's guilt. *Bond*, 226 Va. at 538-39, 311 S.E.2d at 772. Thus, we hold that the error was prejudicial to the defendant; accordingly, we reverse the conviction and remand the case for a new trial.

Because of the likelihood that certain of the remaining questions will arise on remand, it is necessary that we also address

whether the trial court properly admitted evidence of prior threats by the defendant upon his family members. The defendant contends that the admission of evidence of assaults and threats by him on his family members was improper because it was admitted only to show a propensity to commit the type of crimes for which he was charged. Alternatively, the defendant contends that even if the evidence of prior bad acts was relevant, the trial court erred in admitting it because the prejudicial effect far outweighed any probative value. We affirm the trial court's ruling.

Prior crimes or bad acts of a defendant are inadmissible if relevant only to show a criminal disposition to commit the crime for which an accused is on trial. *See Sutphin v. Commonwealth*, 1 Va. App. 241, 245, 337 S.E.2d 897, 899 (1985). However,

> [e]vidence of other offenses is [admissible] if it shows the conduct and feeling of the accused towards his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. Such evidence is permissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial.

*Foster v. Commonwealth*, 6 Va. App. 313, 323, 369 S.E.2d 688, 694 (1988) (quoting *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)). If the evidence tends to prove a material issue or element of the crime and the trial court finds that the probative value of the evidence outweighs any prejudicial effect it will have on the jury, the trial court may in its discretion properly admit the evidence. *Id.* at 323, 369 S.E.2d at 694; *Coe v. Commonwealth*, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). Evidence of the defendant's threats and assaults against his wife and daughter and damage to their property was admitted to prove the relationship between the defendant and his victims. The evidence was probative to show the defendant's motive and intent in committing the alleged acts. The trial court specifically found that evidence of the prior relationship between the parties had probative value to prove motive and thus intent and that the probative value outweighed any prejudicial effect the evidence had on the jury. Therefore, the trial court did not err in admitting the evidence to prove motive and intent, provided the court properly instructs the

jury of the limited purposes for which the evidence can be considered. Since evidence of past crimes or bad acts toward his victim can be considered only to prove motive, intent and the relationship between an accused and his alleged victim, it follows that the trial court erred in allowing the Commonwealth's attorney to argue that the defendant's past mistreatment of his wife could be considered to enhance the defendant's punishment. On remand the evidence may properly be admitted into evidence but it can be considered for the limited purpose previously specified.

For the reasons set forth, we reverse and remand the case for a new trial consistent with this opinion.

*Reversed and remanded.*

Koontz, C.J., and Benton, J., concurred.