### Richmond

WAYNE PHILLIP CREWS, s/k/a
WAYNE PHILLIP CREWS, JR.

v.

COMMONWEALTH OF VIRGINIA

No. 1555-92-2

Decided March 29, 1994

COUNSEL

Glenn L. Berger (Shreve & Berger, on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—Wayne Phillip Crews (defendant) was convicted in a bench trial for distributing cocaine in violation of Code § 18.2-248. On appeal, he argues (1) that the certificate of analysis did not sufficiently establish the chain of custody of the contraband, and (2) that the court erred in admitting into evidence an audio-

tape recorded at the time of the offense. We disagree and affirm the conviction.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it. *Id.* The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination. *Long v. Commonwealth*, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

On the evening of April 23, 1991, police informant Robert Clay was "buying crack cocaine" under the direction of Halifax County Investigator Kuland Roark. After Roark provided Clay with money and a recorder to tape any transactions, Clay and Connie Thompson, a friend, drove to "Robert's Quick Shop," where they were approached by Roy Rudder. Clay advised Rudder that he "wanted a hundred dollars worth of crack," and Rudder immediately "went over to [defendant's] truck, . . . got the crack from [defendant]" and returned with it to Clay's vehicle. Rudder "kept [the cocaine] in his hand the whole time, didn't go in his pocket or nothing." Clay paid Rudder for the drug and watched as he again approached defendant's truck and gave the money to him. Following the transaction, Clay delivered the drug and the related tape recording to Roark. Although the conversations of Clay, Thompson, Rudder and others were recorded, defendant's voice was not identified on the tape.

Roark sealed the substance received from Clay in an envelope and "mailed it to the lab[1] for analysis," "[c]ertified, return receipt requested," evidenced by receipt number P 039 879 035. (Emphasis added). A "Request for Laboratory Examination" (request) accompanied the drugs, which specified the "Investigating Officer: Roark, L.K.," the "Agency Case #: 91-83-00-0614," assigned by Roark, the "Name of Suspect(s): Wayne Phillip Crews Jr. [and] Roy Lee Rudder," and the "Date . . . of Offense: 4-23-

---

[1] A laboratory operated by the Commonwealth's Department of General Services, Division of Forensic Science.

91." An "FS Lab #: C91-03495" and the notation, "Received Cert. Mail P 039 879 035" "4-26-91 MSC" (emphasis added), had been entered on the request form when it was returned to Roark by the lab.

The certificate of analysis (certificate) in issue identified the substance analyzed as "Cocaine," noted the "Date Received 4-26-91," the "FS Lab # C91-03495," the "Suspect(s): CREWS, Wayne Phillip Jr. [and] RUDDER, Roy Lee," "Your Case # 91-83-00-0614," and was mailed by the lab to "ATTN: L.K. Roark." However, it reflected, "Evidence Submitted By: Certified Mail P039 869 035." (Emphasis added).

At trial, defendant objected to the admission of the certificate as evidence of the offending substance in issue, arguing that the discrepancy in the certified mail numbers indicated a break in the chain of custody. The trial judge concluded, however, that

> [the forensic laboratory] made a one-digit mistake. Everything else checks out. The date that it was received and the transit number, the lab number or whatever you want to call it, the case number, all those things check out. The question is whether the one-digit mistake that the lab made in typing in the certified mail number is fatal.

Thus, with "everything else . . . consistent," the court treated the numerical difference as simply "an obvious typographical error" and admitted the certificate.

Defendant also objected to the admission of the audiotape made coincidental with the sale as hearsay and challenged the Commonwealth's interpretation of selected portions of the recorded conversations. The trial court overruled these objections and received the tape into evidence, noting that it could not "make out exactly what [was said] there." Following his conviction, defendant requested that the tape be interpreted by an expert, but the court assured counsel that the disputed recording had "nothing to do with [its] decision" and denied the motion.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Blain v. Commonwealth*, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). When a

party offers proof of the chemical properties of an item in evidence, "authentication requires proof of the chain of custody, including 'a showing with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.' " *Reedy v. Commonwealth*, 9 Va. App. 386, 387, 388 S.E.2d 650, 650-51 (1990) (quoting *Washington v. Commonwealth*, 228 Va. 535, 550, 323 S.E.2d 577, 587 (1984), *cert. denied*, 471 U.S. 1111 (1985)). Although it is not necessary to exclude every possibility that the substance was tainted, the record must account for every " 'vital link in the chain of possession.' " *Robinson v. Commonwealth*, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971) (quoting *People v. Riser*, 47 Cal. 2d 566, 580-81, 305 P.2d 1, 10, *cert. denied*, 353 U.S. 930 (1957)).

When reviewing the chain of custody of materials mailed to a forensic laboratory for analysis, the trial court is assisted by two significant evidentiary principles. First, "[i]n the absence of clear evidence to the contrary, courts may presume that public officers have properly discharged their official duties," and "Postal Service clerks are included in this presumption of regularity." *Robertson v. Commonwealth*, 12 Va. App. 854, 856-57, 406 S.E.2d 417, 418-19 (1991) (citations omitted). Secondly,

[a] report of analysis duly attested by the person performing such analysis or examination in any laboratory operated by (i) . . . the Division of Forensic Science . . . shall be prima facie evidence . . . as to the custody of the material described therein from the time such material is received by an authorized agent of such laboratory until such material is released subsequent to such analysis or examination.

Code § 19.2-187.01.

Once the integrity of the chain is properly established and the remaining provisions of Code §§ 19.2-187 and -187.01 are satisfied, "a certificate of analysis . . . shall be admissible . . . as evidence of the facts therein stated and the results of the analysis or examination referred to therein." Code § 19.2-187; *see Stokes v. Commonwealth*, 11 Va. App. 550, 551-52, 399 S.E.2d 453, 454 (1991).

Here, the record sufficiently established an unbroken chain in the custody of the subject cocaine. Clay gave Roark the substance obtained from defendant within minutes of the transaction, and he subsequently sealed and mailed it to the forensic laboratory for analysis, together with a request for analysis which fully and correctly identified the instant offense and related evidence. There was no evidence that the postal service mishandled the material, and compliance with Code § 19.2-187.01 provided *prima facie* proof of its custody in the lab until released following analysis.

A comparison of the request form which accompanied the drug to and was returned from the lab with the disputed certificate provides the final link in the chain. The date of the offense, the identities of the suspects and the investigating officer and the case numbers assigned by the officer and the lab all coincide to connect the drug analyzed and subject of the certificate to the substance purchased from defendant. The single digit discrepancy in certified mail numbers was simply one among several factors to be considered by the trial judge in assessing the underlying authenticity of the certificate and its contents. The chain of custody was therefore proven with sufficient reasonable certainty, and the certificate was properly received into evidence.

■ Defendant's challenge to the admissibility of the audiotape recorded at the time of the purchase is also without merit. Assuming, without deciding, that this evidence was inadmissible, the court expressly noted that the recording "had nothing to do" with its decision in the case. "A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline . . . to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both." *Eckhart v. Commonwealth*, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981). Therefore, this issue was clearly of no consequence to the conviction.

Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

Baker, J., and Barrow, J., concurred.