BENTON, Judge,
dissenting.
I.
I agree with the majority opinion that the trial judge erred in allowing the psychologist to opine that the child had been sexually abused. See Jenkins v. Commonwealth, 21 Va.App. 222, 463 S.E.2d 330 (1995). The elements of an offense and the identity of the criminal agent are ultimate facts at issue in a criminal prosecution. Nicholas v. Commonwealth, 91 Va. 741, 750, 21 S.E. 364, 366 (1895). In a prosecution for aggravated sexual battery under Code § 18.2-67.3, whether sexual abuse occurred is an element of the offense that the jury must decide based upon the evidence in the record. The Supreme Court has clearly stated in Cartera v. Commonwealth, 219 Va. 516, 248 S.E.2d 784 (1978), that an expert may not express an opinion as to “ ‘the precise or ultimate fact in issue.’ ” Id. at 519, 248 S.E.2d at 786 (quoting Webb v. Commonwealth, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963)).
I disagree, however, with the majority’s holding that the error was harmless. This Court cannot reasonably conclude upon this record that the error did not affect the jury’s verdict. Lavinder v. Commonwealth, 12 Va.App. 1003, 1005, 407 S.E.2d 910, 911 (1991). The issue whether Jenkins sexually abused the child was disputed. Nothing in the record suggests that the jury did not rely upon the testimony of the psychologist in arriving at its verdict.
Other evidence of a disputed fact standing alone, does not establish that an error is harmless.... [A] harmless error analysis ... [is not] simply a sufficiency of the evidence analysis.
*526 Hooker v. Commonwealth, 14 Va.App. 454, 458, 418 S.E.2d 343, 345 (1992).
This case is not one in which “the other evidence of guilt was so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.” Id. at 457 n. 2, 418 S.E.2d at 345 n. 2. Even if “the other evidence amply supports the jury’s verdicts, [evidence is not harmless when] the disputed testimony may well have affected the jury’s decision.” Cartera, 219 Va. at 519, 248 S.E.2d at 786. Furthermore, the quality of the inadmissible evidence must be considered. “When an opinion is rendered by a witness whom the trial [judge] has declared to be an expert in his field, such opinion will carry great weight with the jury and could very well have been the decisive factor in their minds in determining the [accused’s] guilt.” Callahan v. Commonwealth, 8 Va.App. 135, 140, 379 S.E.2d 476, 479 (1989). In this case, the psychologist’s testimony, based on ten sessions with the child, that sexual abuse occurred obviously significantly influenced the jury’s decision.
Although Jenkins’ statement was inculpatory, this Court cannot say that the jury could not have cast it in a different light in the absence of the inadmissible evidence. In his statement, Jenkins “said that he was sitting in the living room watching TV, and that [the child] was sitting in his lap, leaning against his chest, and ... he put his hand on his penis from over top his clothing and held it there and touched him there for about a minute.” The jury could have found that Jenkins lacked the intent to commit sexual battery. In addition, if the jury accepted Jenkins’ statement that the child sat on his lap on one occasion, the jury could have concluded that the single episode could not conceivably have led to the bizarre conduct exhibited by the child. Moreover, in considering the mother’s testimony, the child’s great grandparent’s testimony, and Jenkins’ admission, the jury certainly could have found that the child’s behavior had its genesis prior to and unrelated to the one occasion Jenkins admitted touching the child.
*527 Aside from the expert’s opinion, the origin of the child’s behavior was not clearly established. The child’s mother described instances beginning in 1992 when the child, who was then two years of age, began to talk about sex and engage in sexually-oriented behavior toward her. For example, she testified that one evening when she was watching television the child entered her bedroom, removed his clothing, and said he wanted to have sex with her. On other occasions, he told her “he want[ed] to sex [her] ... and trie[d] kissing [her] with his mouth open [while] ... mov[ing] his head around like a french kiss.” She testified that on other occasions he “gyrate[d] his hips and rub[ed] his penis, ... put [a] pillow on top of him or underneath ... him saying that he was sexing the pillow, ... [and] started rubbing his behind on [a retail store] display saying that he was sexing it.”
The child’s mother testified that prior to the first of those incidents the child took showers with her and that he fondled her breast while she showered with him. She later stopped taking showers with him when he began talking about sex. Although the child also showered with the father, no testimony established that the child fondled his father. The psychologist testified that if he had known that the mother and the father were showering with the child he would have discouraged it. The psychologist also testified that sexual awareness could result in a child of one to three years of age who took showers with a parent.
The child’s great grandmother, who was the child’s primary babysitter five days a week for three years, testified that on several occasions she saw the child “run his hand up [his mother’s] dress, and [the mother would] just cutely smile and say ‘Oh, [child] don’t do that.’ ” She also testified that she admonished the child’s mother to discontinue taking baths with the child and “told her it wasn’t right.” The great grandfather also testified that “quite a few times” the child inappropriately put his hands on his mother and in her brassiere to feel her breasts. He testified that he frequently admonished the child’s mother for allowing the child to touch her in that manner.
*528 The evidence, thus, provided a basis from which the jury could have drawn an inference, in the absence of the inadmissible part of the psychologist’s testimony, that circumstances other than Jenkins’ conduct caused the child’s behavior. Indeed, the evidence suggests that the child may have several stimuli for his behavior.
The evidence proved that the two-year-old child was extensively exposed to cable television and watched movies. The mother testified that she has television cable service on two of the five televisions in her house. The great grandmother testified that the child watched television and movies at her house.
In addition to television, the evidence suggests that by age three the child had other exposures that may have influenced his behavior. The great grandmother testified that she warned the mother about her conduct with the child because the child “knew too much ... [and] was too bright.” The evidence also suggests that the child was exposed to adult music and “could sing ‘Achy Breaky Heart’ as good as” any singer. The evidence also proved that the child had two sixteen-year-old female babysitters who have kept him on weekends and overnight.
The child’s conduct, sexual talk, and singing of an adult love ballad are consistent with the daily fare of cable television. Moreover, unseemly as it may be, many adult males are seen in public with a hand placed on their genital region. The jury obviously could have found that the child’s conduct was the manifestation of various exposures unrelated to Jenkins.
In addition, no evidence proved that the child .approached any person other than his mother in a sexually suggestive manner. Indeed, the child never approached the father in that manner and never rubbed his father sexually. The jury might have found it significant that the child only exhibited such conduct toward a female. On this evidence, the origin of the child’s behavior was a question for the jury to decide.
I believe that it is evident from the record how important the psychologist’s opinion could have been in the jury’s deci *529 sion. Without his inadmissible testimony, the jury might have reached the conclusions that the child’s conduct had its origin in exposures to inappropriate but everyday experiences and that Jenkins had no intent to sexually touch the child. The record demonstrates that the erroneous admission of the psychologist’s testimony greatly lessened the Commonwealth’s burden to prove sexual abuse beyond a reasonable doubt. Thus, I cannot “conclude, without usurping the jury’s fact finding function, that, had the error[s] not occurred, the verdict would have been the same.” Lavinder, 12 Va.App. at 1005, 407 S.E.2d at 911; see Code § 8.01-678. Because admission of the psychologist’s opinion as to the ultimate issue of fact was not harmless error and the trial judge improperly allowed the psychologist to repeat the child’s complaint of being “sexed,” I would reverse the appellant’s conviction and remand for a new trial.
II.
The psychologist testified that the child “on one occasion, indicated to me that he had been sexed. That was his word.” I would also hold that the trial judge erred in allowing the psychologist to so testify. The majority approves of this evidence as either non-hearsay or an exception to the hearsay rule.
In finding the statement an exception to the hearsay rule, the majority reads Cartera too broadly and expands the use of hearsay beyond what the Supreme Court of Virginia ruled in that case. The Supreme Court “acknowledgefd] the exception to the hearsay rule” that renders admissible statements made to physicians “concerning [a patient’s] ‘past pain, suffering and subjective symptoms’ to show ‘the basis of the physician’s opinion as to the nature of the injuries or illness.’ ” 219 Va. at 518, 248 S.E.2d at 786. See also Mackall v. Commonwealth, 236 Va. 240, 255, 372 S.E.2d 759, 769 (1988), cert. denied, 492 U.S. 925, 109 S.Ct. 3261, 106 L.Ed.2d 607 (1989). The Supreme Court declined, however, to apply the exception to statements “concerning the circumstances of the offenses and the description of the assailant” made by the rape victims. *530 Cartera, 219 Va. at 518, 248 S.E.2d at 785. The Court declined to do so because “[t]his testimony goes beyond a recital of ‘past pain, suffering and subjective symptoms,’ ” Id. at 518, 248 S.E.2d at 786.
The testimony that the trial judge admitted in this case is analogous to the testimony the Supreme Court barred in Cartera. The psychologist’s testimony that the child told him he had been “sexed” concerns the circumstances of the particular offense. As in Cartera, the statement was a description of the child’s alleged physical encounter and not a description of the child’s symptoms. By stating that he was “sexed,” the child did not report his pain, suffering or subjective symptoms but rather described the circumstance of events. Cartera does not stand for the proposition that a psychologist may describe the actual physical contact from which the prosecution arises.
Without reference to any Virginia decisions, the majority expands Cartera beyond its bounds by reference to decisions from other states. The Commonwealth concedes that “many of these out-of-state cases are partially based on the adoption by the states of rules equivalent to the Federal Rules of Evidence, § 803(4).” The Supreme Court of Virginia, however, has not adopted the Federal Rules of Evidence as rules of evidence in Virginia. Furthermore, I find no indication in Virginia case law to suggest that the rule announced in Cartera can be supplemented and expanded by reference to the Federal Rules of Evidence or rules of decision from other states based on application of the Federal Rules.
In addition, I do not share the majority’s assumption that statements this child made to a psychologist are inherently reliable. The basis for allowing in evidence statements that a patient makes to a treating physician is the assumption that the patient understands “that the effectiveness of the treatment received will depend upon the accuracy of the information provided to the physician.” John W. Strong, 2 McCormick on Evidence § 277, at 246-47 (4th ed.1992). This principle has no application to a child two years of age, *531 who was not competent to testify at trial, talking to a psychologist. If a child is too young to have the mental capacity to testify at trial, obviously the child cannot understand the importance of truthfully relating matters to a psychologist for purposes of treatment.
Furthermore, Jenkins had no opportunity to challenge directly the child’s statements and to demonstrate that the child’s use of the term may have arisen from a context that was unrelated to him or that bore no nexus to sexual abuse by any person. Close scrutiny must be given to a situation, such as here, where because of incompetence, cross-examination of an accuser is non-existent. I would hold that the psychologist’s repeating of the child’s statement was hearsay, established an ultimate fact element of the offense, and was clearly prejudicial.
Under the majority’s analysis, if the child had named Jenkins during the therapy session, the testimony of the psychologist repeating that disclosure would have been admissible. Additionally, because the psychologist may have believed that the circumstances surrounding how the abuse occurred might also be important for treatment or forming an expert opinion, the majority’s reasoning would allow a psychologist to relate all of those circumstances and where the abuse occurred. The majority’s opinion will allow experts to repeat all the nuances of complaints and establish every element of the offense in detail under the guise that the descriptions of the offense will not be offered for the truth of the matter asserted. That reasoning directly contradicts Cartera.
For these reasons, I would reverse the conviction and remand for a new trial.