COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


ANTONIO FRANCIS BUCK

                                    MEMORANDUM OPINION* BY
v.    Record No. 1806-98-2          JUDGE SAM W. COLEMAN III
                                         JANUARY 11, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      James B. Wilkinson, Judge

            Carolyn V. Grady (Epperly, Follis & Schork,
            P.C., on brief), for appellant.

            Michael T. Judge, Assistant Attorney General
            (Mark L. Earley, Attorney General, on brief),
            for appellee.


     Antonio Francis Buck, the appellant, was convicted in a

jury trial of two counts of first-degree murder, in violation of

Code § 18.2-32, and two counts of use of a firearm during the

commission of a felony, in violation of Code § 18.2-53.1.  The

sole issue on appeal is whether the trial court erred by

admitting evidence of other crimes and prior bad acts.  For the

following reasons, we affirm the convictions.

                            BACKGROUND

     The Richmond Police Department received an emergency call

that a shooting had occurred at a residence on Calhoun Street.

_____

      * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Detectives were dispatched to Annette Morris' apartment. Upon arrival, the detectives found two homicide victims, Annette Morris and Theresa Newton, lying on the floor next to the front door. Evidence indicated that the front door had been forcibly entered. The back door of the apartment was barricaded from the inside with a chair. The apartment was not in disarray, and there was no evidence that Morris had been robbed.

At trial, a forensic scientist testified that Newton had been shot at point blank range and that Morris had been shot twice at close range, approximately twenty-four inches from the gun barrel. All three bullets were fired from the same weapon. The forensic scientist also testified that the weapon was most likely a .38 caliber firearm.

On the evening of the shooting, Morris' nine-year-old son, Tyree Morris, was asleep upstairs. Tyree was awakened suddenly and heard his mother, Annette Morris, and Buck arguing. Tyree had known Buck for almost a year while Buck was dating Tyree's mother. Tyree heard his mother scream "don't shoot" a number of times, and then he heard a gunshot and someone fall against a chair. Soon after hearing the gunshot, Tyree went to the pay phone across the street and called 9-1-1.

At trial, the Commonwealth introduced, over the defendant's objection, several arrest warrants which had been sworn out against Buck by Morris, charging him with assault and battery of

Morris, trespass, and pointing and brandishing a firearm at Morris. Some of the warrants had been sworn out eight months before Morris was shot.

A Richmond police officer testified that twelve days before Morris was killed, he investigated a complaint by Morris that Buck had assaulted her. The officer arrested Buck nine days before Morris was killed and while being taken into custody, Buck stated that Morris should not have taken out a warrant for him, that "she was going to pay," and that he was "going to get her." Another deputy testified that while Buck was in custody on this charge, he was in a "rage." The deputy overheard Buck on the telephone stating that he was "going to kill [Morris], she didn't have to have me arrested, I'm going to kill her." The deputy testified that she interceded and told Buck not to make threats, but he persisted in stating that he would kill Morris for having him arrested.

Morris' brother testified that he saw Buck with a .38 caliber handgun two months before his sister's death. Morris' sister testified that during that same time period, she witnessed Buck "grabbing" Morris and heard Buck "threaten to kill Morris." Tyree Morris testified that during the month before his mother's death, he witnessed Buck push her over a balcony and into a wall.

ANALYSIS

The question on appeal, as framed by appellant, is whether the trial court erred by permitting the Commonwealth to introduce irrelevant and prejudicial evidence in the form of warrants charging unadjudicated crimes and witnesses' testimony about past unrelated acts of violence between Morris and Buck. The issue, as we perceive it, is whether the evidence of prior bad acts by Buck against Morris and the fact that Morris had Buck arrested is sufficiently relevant to prove a material fact. In order to be admissible under one of the exceptions to the rule barring the admission of evidence of other crimes or prior bad acts, the evidence must be relevant and the probative value of the evidence must outweigh any incidental prejudice.

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994) (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citation omitted). Evidence which tends to prove a material fact is relevant and admissible, "'unless excluded by a specific rule or policy consideration.'" Evans v. Commonwealth, 14 Va. App. 118, 122, 415

- 4 -

S.E.2d 851, 853-54 (1992) (quoting Cash, 5 Va. App. at 510, 364 S.E.2d at 771).

Evidence that the accused committed crimes or other bad acts is inadmissible if offered solely to prove the accused committed or likely committed the crime charged.  See Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).  To infer that an accused probably committed the charged offense because he or she has committed a similar offense is unsound reasoning and, without other evidence making the proof of a prior bad act or crime relevant to a material fact in the case, such evidence is highly prejudicial and inadmissible.  "[Similar crimes evidence] merely show[s] that [an accused] has the propensity to commit the crime [charged] and this inference has been held to be error because it reverses his presumption of innocence."  Spence v. Commonwealth, 12 Va. App. 1040, 1045, 407 S.E.2d 916, 918 (1991).

However,

> [t]he many exceptions to the rule are as
> well established as the rule itself.
> Specifically, other crimes evidence is
> admissible where it shows the conduct and
> feeling of an accused toward his victim or
> establishes their prior relationship; where
> it proves motive or opportunity to commit
> the crime charged; where it proves an
> element of the crime charged; where it
> proves intent or guilty knowledge on the
> part of the accused . . . .  Thus, in order
> to be admissible under one of the
> exceptions, evidence of other crimes must
> tend to prove a material fact and its

> probative value "must outweigh the prejudice inherent in proving that an accused has committed other crimes."

Rodriguez v. Commonwealth, 18 Va. App. 277, 280-81, 443 S.E.2d 419, 422 (1994) (en banc) (citations omitted).

Here, the evidence that Morris had sworn out warrants against Buck for assaults and trespasses allegedly committed against her and the witnesses' testimony concerning prior bad acts committed by Buck against Morris were properly admitted to show the nature of the relationship between the accused and the victim and to prove that Buck harbored a motive to harm or kill Morris. It is the fact that warrants had been sworn out by Morris against Buck, irrespective of the allegations in the warrants, that proved that a contentious and tumultuous relationship existed between the two.

The fact that Morris had sworn out warrants against Buck also proved that Buck had a motive and an intent to kill or do harm to Morris. See Callahan v. Commonwealth, 8 Va. App. 135, 141-42, 379 S.E.2d 476, 480 (1989) (finding that evidence of defendant's threats and assaults on wife and children were properly admitted to show the defendant's relationship with his victims, which proves motive and intent). Proof that an accused has a motive to harm or kill a victim is admissible as circumstantial evidence that the person committed the crime, see Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229,

233-34, aff'd en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993), and did so with a specific intent. See Robinson v. Commonwealth, 228 Va. 554, 557, 322 S.E.2d 841, 843 (1984). Thus, we hold that the evidence that Morris had Buck arrested was relevant to prove motive and to show the nature of the relationship between the accused and the victim. See Kelly v. Commonwealth, 8 Va. App. 359, 369-71, 382 S.E.2d 270, 275-77 (1989) (finding that evidence that defendant previously assaulted and battered his wife and was subsequently arrested was admissible to show a past course of violence by the defendant and a motive for killing his wife).

In addition to the evidence that Morris had Buck arrested on several occasions, on two occasions after Buck had been arrested for allegedly assaulting Morris, he, in the presence of two law enforcement officers, angrily expressed his intention to kill Morris for having him arrested. See generally, Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981) (noting that where motive is a relevant fact, evidence of other offenses is admissible if it shows the conduct or attitude of the accused toward his victim or establishes the relationship between the parties). The evidence of specific threats by an accused to harm or kill the victim is highly relevant to prove motive and intent and is a circumstance that the fact finder may consider in determining an accused's guilt. Thus, the admission of the

specific threats Buck made after he was arrested, to kill or harm Morris for having him arrested, was highly relevant to prove motive. In addition, the specific instances of Buck "grabbing" and "pushing" Morris and threatening to kill her were also relevant to prove the nature of the relationship between the parties and to prove motive.

Our inquiry does not end there, however. In order for the relevant evidence of other crimes and prior bad acts to be admissible, the legitimate probative value of the evidence must exceed any incidental prejudice caused Buck. See Guill v. Commonwealth, 255 Va. 134, 139, 495 S.E.2d 489, 491-92 (1998). Buck contends that the prejudicial effect of the evidence outweighed the probative value because the offenses charged in the warrants included allegations of unadjudicated crimes. His contention has no merit.

The evidence was not offered to prove the truth of the charges or crimes allegedly committed by Buck; but rather, the evidence was offered to show that Morris had him arrested, which defined their relationship and caused him to threaten to kill her. The trial court instructed the jury that the warrants were not to be considered as proof of the charges in the warrants or to prove that Buck had assaulted Morris in the past. Rather, the warrants were offered and admitted to prove that over an eight-month period Morris had Buck arrested on numerous

- 8 -

occasions and that the continuous arrests provided a motive for Buck to kill Morris.  The jury is presumed to have followed the trial court's limiting or cautionary instruction.  See LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983).

In summary, we find that the trial court's admission of the evidence of the warrants falls within an exception to the rule barring the admission of evidence of prior bad acts and that the trial judge did not err by finding that the probative value of the testimony outweighed any prejudicial effect.  See Rodriguez, 18 Va. App. at 280-81, 443 S.E.2d at 422.  The admission of the evidence was not an abuse of discretion.  We, therefore, affirm the judgment of the trial court.

Affirmed.