COURT OF APPEALS OF VIRGINIA

Present: Judges Coleman, Frank and Senior Judge Hodges
Argued at Salem, Virginia


TIMOTHY WAYNE ABBOTT

MEMORANDUM OPINION[*] BY

v.    Record No. 1887-98-3        JUDGE SAM W. COLEMAN III
                                    JANUARY 18, 2000

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

Mark T. Williams (Williams, Morrison, Light &
Moreau, on brief), for appellant.

Steven A. Witmer, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


Timothy Wayne Abbott was convicted following a jury trial of

first-degree murder of his wife, Melissa Abbott, in violation of

Code § 18.2-32, and use of a firearm in the commission of a felony

in violation of Code § 18.2-53.1.  On appeal, Abbott argues that

the trial court erred by admitting:  (1) testimony from the

victim's friend that the victim had stated that she was afraid of

Abbott; (2) a tape recording of a telephone conversation between

Abbott and an unidentified woman; (3) evidence of Abbott's

firearms collection; (4) evidence that Abbott was the beneficiary

of the victim's life insurance policy; and (5) evidence that

---

    * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Abbott previously struck the victim. For the reasons that follow, we affirm the convictions.

BACKGROUND

Viewed in the light most favorable to the Commonwealth, the evidence established that on February 8, 1997, at approximately 8:00 p.m., the victim was shot and killed by a single gunshot wound as she returned home from work. Ronald Burch, the Abbotts' neighbor, testified that shortly after 8:00 p.m., Timothy Wayne Abbott came to Burch's house and pounded on his door. Burch described Abbott as hysterical. Unable to understand what Abbott was mumbling, Burch followed Abbott to his home where Burch observed that the front door had been shattered and a purse and firearm were lying on the porch. Burch found Abbott inside the residence, slumped by the bed in the master bedroom. Abbott asked Burch if he had called 911. Abbott stated that he had shot his wife. Burch quickly dialed 911 and waited for the authorities to arrive.

When the authorities arrived, the victim was found lying to the right of Abbott's pick-up truck which was parked in the driveway. Abbott was lying over the victim's body, crying. The victim's keys were in the front door of the residence and the lock was unlocked. A bullet casing was found 4'7" from the front wall of the residence, and a bullet was found in the front yard.

At trial Abbott testified that he loved his wife dearly and that they were devoted to one another. Abbott testified that he kept a gun with him at all times for protection. The gun was always in immediate reach, loaded, and with the safety off. He stated that when he was not traveling as part of his employment as a truck driver, he kept the gun in the house for protection. Abbott testified that his house had been broken into on one occasion, and on a separate occasion, a "peeping tom" had been seen near the house.

On the day of the shooting, Abbott arrived home at approximately 7:00 p.m. and fell asleep on the daybed in the living room. He testified that he was awakened by a loud noise. "[P]anic stricken," Abbott noticed that the front door was open. Abbott testified that the next thing he remembered was that "the gun was in his hand and that it had just been fired." He observed the person he shot move away from the front door, so he proceeded onto the porch. At that point, he realized that he had shot his wife.

Abbott testified that he first called 911, then went to his neighbor's house and asked him to call for help. When Abbott returned from his neighbor's house, his wife's body was lying in the driveway by the pick-up truck.

When asked about a life insurance policy and their financial situation, Abbott testified that he was unaware that his wife had

a life insurance policy and of any financial problems they may have been having.  He stated that he was not involved in paying the bills or in any aspect of the household finances.

The assistant chief medical examiner testified that the victim died from a single gunshot wound to the chest, just left of center.  The bullet passed through the chest cavity from right to left, causing internal injuries and bleeding.  The medical examiner testified that the entrance and exit wounds were horizontal.  A forensic scientist testified that Abbott held the firearm approximately eighteen to thirty-six inches away from the victim when he fired the weapon and that at least five and one-half pounds of pressure were required to pull the trigger.

The Commonwealth also introduced the evidence of a friend of the victim who testified that Abbott struck the victim two weeks before the shooting, that he repeatedly called her derogatory names, and that he criticized her about her appearance.  Another friend of the victim testified over objection that the victim had told her she was afraid of Abbott.  In addition, the Commonwealth introduced an audio recording of a telephone conversation that Abbott had with an unidentified female in which Abbott made derogatory remarks about his wife and discussed coming to the woman's house "for a drink" and to "watch t.v. in her bedroom."

ANALYSIS

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'" Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994) (citation omitted). "Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988). Evidence which tends to prove a material fact is relevant and admissible, unless excluded by a specific rule or policy consideration." Evans v. Commonwealth, 14 Va. App. 118, 122, 415 S.E.2d 851, 853-54 (1992). A fact is material if it tends to prove an element of an offense or defense. Johnson v. Commonwealth, 2 Va. App. 598, 601, 347 S.E.2d 163, 165 (1986). "Every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is admissible." Epperly v. Commonwealth, 224 Va. 214, 230, 294 S.E.2d 882, 891 (1982) (citation omitted).

## A.   Victim's Prior Statement of Fear

Abbott argues that the trial court erred in admitting Patty Lacks' testimony that the victim, one month prior to the shooting, stated that she was afraid of Abbott. Abbott argues that the statement was not admissible under the state-of-mind exception to the hearsay rule because the Commonwealth failed to show that the

statement was material, relevant, and otherwise reliable.

Further, he argues that there was no evidence that the victim's

state of mind was ever communicated to him.

"'"Hearsay evidence is testimony in court . . . of a
statement made out of court [that is] offered as an assertion to
show the truth of matters asserted therein, and thus resting for
its value upon the credibility of the out-of-court asserter."'"
Taylor v. Commonwealth, 28 Va. App. 1, 9, 502 S.E.2d 113, 117
(1998) (en banc) (citations omitted).

> If, however, the statement is admitted to
> prove some other extraneous fact, such as
> that the statement was in fact made, the
> state of mind of the declarant, or notice or
> knowledge, then the statement is not hearsay
> and will be admissible if relevant and not
> otherwise violative of another rule of
> evidence.

Hanson v. Commonwealth, 14 Va. App. 173, 187, 416 S.E.2d 14, 22
(1992) (citing Evans-Smith v. Commonwealth, 5 Va. App. 188, 197,
361 S.E.2d 436, 441 (1987)).  The state of mind of a homicide
victim may be relevant and material where the defendant contends
that the death was the result of suicide, accident, or
self-defense.  See Hanson, 14 Va. App. at 188, 416 S.E.2d at 23.

> For the state of mind of the victim to be
> relevant to prove the state of mind of the
> accused, some nexus must exist which
> inferentially implicates the accused, such
> as by showing "previous threats made by the
> defendant towards the victim, narrations of
> past incidents of violence on the part of
> the defendant or general verbalizations of
> fear of the defendant."

- 6 -

<u>Id.</u> at 188-89, 416 S.E.2d at 23 (citation omitted).  Thus, as we noted in <u>Hanson</u>, the victim's state of mind may be relevant to prove the defendant's state of mind where it has been communicated to the defendant.  However, the relevance of the victim's state of mind may also be established by showing some other nexus "which inferentially implicates the accused."  <u>Id.</u> Accordingly, the Commonwealth is not limited to establishing relevance by proving that a victim's statements were communicated to the defendant, if the statement showing the victim's state of mind is shown to reflect the defendant's state of mind or relationship with the victim by other independent evidence.  <u>See</u> <u>id.</u>; <u>cf.</u> <u>Elliot v. Commonwealth</u>, 30 Va. App. 430, 517 S.E.2d 271 (1999).  <u>But</u> <u>see</u> <u>Clay v. Commonwealth</u>, 30 Va. App. 650, 519 S.E.2d 393 (1999) (rehearing <u>en</u> <u>banc</u> pending).

At trial, Lacks testified that approximately one month before the shooting, she heard the victim state that she was afraid of Abbott.  Over objection, the trial court admitted the testimony, finding that it was relevant to prove the victim's state of mind, which tended to prove the nature of the marital relationship.

Abbott testified that the victim's death was an accident, rather than an intentional act by him, and that their marriage was "a very good one."  Abbott's state of mind was a critical issue in the case in that it was relevant and material to whether the shooting was accidental.  <u>See</u> <u>Elliot</u>, 30 Va. App. at

- 7 -

438, 517 S.E.2d at 275.  The victim's state of mind was relevant to prove the nature of the marital relationship which, in turn, was probative of Abbott's state of mind and whether he harbored a motive and intent to kill his wife.  See Compton v. Commonwealth, 219 Va. 716, 729, 250 S.E.2d 749, 757 (1979) (evidence of prior relations existing between accused and victim relevant to issue of whether death was accidental).  The victim's statement that she feared her husband occurred within one month of the shooting.  The statement and circumstances under which it was made do not suggest fabrication and contrivance.  The evidence of the victim's fearful state of mind was also corroborated by the Commonwealth's evidence that Abbott had struck the victim within two weeks of the shooting and that he often called her derogatory names and "ordered the victim around."  Therefore, the victim's state of mind was relevant and admissible.  See Hanson, 14 Va. App. at 188-89, 416 S.E.2d at 23.

### B.  Answering Machine Tape

Abbott argues that the trial court erred by admitting a tape recording of a telephone conversation which suggested that Abbott was engaged in an extramarital affair.  Abbott, relying on Brown v. Commonwealth, 3 Va. App. 182, 348 S.E.2d 849 (1986), argues that the tape recording, which failed to identify the female participant or when the conversation occurred, was inadmissible

because the conversation was simply too speculative and conjectural.

"[I]n a prosecution for the murder of one's spouse the Commonwealth generally may introduce evidence of marital infidelity and may offer relevant evidence to show marital disharmony or to rebut evidence of marital bliss." Brown, 3 Va. App. at 185, 348 S.E.2d at 851. During cross-examination, the Commonwealth was permitted, over objection, to introduce portions of an answering machine tape recording that was recovered by the victim's stepmother three to four weeks after the shooting. In the taped conversation, an unidentified woman invited Abbott to her home to have drinks and watch television in her bedroom. On the tape, Abbott described the victim in angry terms, using profanity. Abbott admitted that the male voice "sounded like" him but testified that he did not recall the conversation and could not identify the speakers.

The Commonwealth proffered the tape recording to rebut Abbott's assertion that he was devoted to his wife and that they had a "very good," stable marriage. The evidence was relevant to prove the relationship in the recent past between Abbott and the victim.

Moreover, Abbott's reliance on Brown is misplaced. In Brown, the defendant maintained that his wife was killed by an intruder. Evidence was introduced that the defendant had given

- 9 -

gifts to two women four to eight years prior to the wife's murder and that the defendant had photographed one of the women. There was no direct evidence of a sexual relationship between the defendant and either of the women. Under these circumstances, we concluded that the

> innocuous and inclusive nature of the evidence combined with the lapse of four to eight years between these incidents and the murder of [the victim] do not afford any "reasonable presumption or inference on matters in issue" and fail to provide a logical and natural connection to [the defendant's] guilt.

3 Va. App. at 186, 348 S.E.2d at 852. Here, the evidence was recent and relevant to establish the nature of the marital relationship and to rebut Abbott's testimony of marital bliss. The evidence was not remote; rather, the victim's stepmother testified that she recovered the tape from the answering machine a couple of weeks after the shooting. Thus, the evidence was probative of Abbott's motive.

### C.  Abbott's Familiarity With Firearms

Next, Abbott argues that the trial court erred by allowing the Commonwealth to elicit evidence regarding his gun collection and by admitting into evidence a photograph of the collection. Abbott contends that the trial court's rulings improperly allowed the Commonwealth to impeach him by introducing extrinsic evidence on a collateral issue.

- 10 -

"A witness may not be cross-examined regarding any fact irrelevant to the issues on trial when that cross-examination is for the mere purpose of impeaching his credit by contradicting him . . . [nor] may [he] be asked about any collateral independent fact 'merely with a view to contradict him afterwards by calling another witness.'" Simpson v. Commonwealth, 13 Va. App. 604, 606, 414 S.E.2d 407, 409 (1992) (citation omitted). "'The test as to whether a matter is material or collateral, in the matter of impeachment of a witness, is whether or not the cross-examining party would be entitled to prove it in support of his case.'" Williams v. Commonwealth, 16 Va. App. 928, 935, 434 S.E.2d 343, 347 (1993) (quoting Allen v. Commonwealth, 122 Va. 834, 842, 94 S.E. 783, 786 (1918)).

During cross-examination of Abbott, the Commonwealth undertook to discredit his claim that the shooting was accidental by proving that he was knowledgeable and familiar with the use and handling of firearms. Abbott testified that he had a "little" experience with firearms. He admitted that he had been in the Army and had been trained in the "basics" of firearm usage. He also acknowledged that he owned several firearms at the time of the shooting and that he was familiar with using all of them. Over Abbott's objection, the Commonwealth then tendered a photograph showing his gun collection. Abbott stated that the picture accurately depicted the collection. On re-direct

examination, Abbott pointed out that three of the weapons were BB guns.

The principle that prohibits a witness from being cross-examined and impeached on a collateral issue is not applicable here. Generally, evidence impeaching a witness on a collateral issue is irrelevant or of such little probative value that admitting it would confuse the fact finder or divert the fact finder's attention from the relevant issues. Here, the evidence regarding the vastness of Abbott's gun collection and his experience with the weapons was relevant to disprove a material issue that Abbott interjected into the case. The evidence that Abbott had an extensive gun collection and experience with firearms was not offered solely to impeach his prior testimony that he had a "little" experience with firearms but was offered to disprove his contention that the shooting was accidental. Proof that a person is familiar with and has had training in the use of firearms is a circumstance that a fact finder may consider in determining whether to believe a person's claim that he accidentally discharged a firearm which killed his spouse. We find that the trial court did not err by admitting the photograph and by allowing the Commonwealth to inquire about the gun collection.

## D. Life Insurance Policy

Abbott next contends that the trial court erred by admitting evidence that he was the beneficiary of the victim's $50,000 life insurance policy purchased three years before the shooting. Abbott argues that the evidence was remote and speculative and contained little probative value.

Whether an accused has knowledge of a fact or situation when he behaves in a certain way or has a motive to behave in a certain way may be relevant in determining the accused's intent. 1 Charles E. Friend, The Law of Evidence in Virginia § 12-6 (4th ed. 1993). However,

> "[b]efore a fact or circumstance is admissible in evidence against a party to show motive, such fact or circumstance must be shown to have probably been known to him, otherwise it could not have influenced him, for a man cannot be influenced or moved to act by a fact or circumstance of which he is ignorant."

Robinson v. Commonwealth, 228 Va. 554, 558, 322 S.E.2d 841, 843 (1984) (quoting Mullins v. Commonwealth, 113 Va. 787, 789-90, 75 S.E. 193, 195 (1912)).

Although the Commonwealth sought to introduce evidence that Abbott was experiencing financial difficulties, Abbott disavowed any knowledge of the couple's financial problems, stating that the victim had control over the household finances. Further, Abbott testified that even though he was initially aware that he was the beneficiary of the victim's life insurance policy, he

- 13 -

had forgotten about the policy until recently.  Moreover, he points out that no evidence shows he had tried to collect on the policy.  In fact, the evidence proves a claim was filed by the victim's father, who was the administrator of the victim's estate.

Evidence of the life insurance policy was relevant to the issue of whether Abbott had a motive for killing his wife.  See Mullis v. Commonwealth, 3 Va. App. 564, 574, 351 S.E.2d 919, 925 (1987) (recognizing that defendant's knowledge that victim owned life insurance policy naming defendant as beneficiary was relevant to show motive).  Even though Abbott testified that he had recently forgotten about the life insurance policy, he had knowledge of the existence of the policy.  The fact that he disavowed a present knowledge of the policy or of the couple's dire financial situation goes to the weight of the evidence, not its admissibility.  See generally Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988); see also Duncan v. Commonwealth, 2 Va. App. 717, 723-25, 347 S.E.2d 539, 543-44 (1986).  We find no abuse of discretion in the trial court's determination that the probative value of the evidence exceeded any prejudicial effect that may have resulted from its admission.

E.  Prior Physical Abuse

Last, Abbott argues that the trial court's admission of evidence that he previously had struck his wife was improper character evidence.

Evidence that an accused committed crimes or other bad acts is inadmissible when offered to prove the accused committed or likely committed the crime charged.  See Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). "[Similar crimes evidence] merely show[s] that [an accused] has the propensity to commit the crime [charged] and this inference has been held to be error because it reverses his presumption of innocence."  Spence v. Commonwealth, 12 Va. App. 1040, 1045, 407 S.E.2d 916, 918 (1991).  However,

> [t]he many exceptions to the rule are as
> well established as the rule itself.
> Specifically, other crimes evidence is
> admissible where it shows the conduct and
> feeling of an accused toward his victim or
> establishes their prior relationship; where
> it proves motive or opportunity to commit
> the crime charged; where it proves an
> element of the crime charged; where it
> proves intent or guilty knowledge on the
> part of the accused or negates good faith or
> the possibility of mistake or accident;
> where it proves the identity of the accused
> as the one who committed the crime charged
> by showing criminal acts so distinct as to
> indicate a modus operandi; and where it
> demonstrates a common scheme or plan of
> which the crime charged is part.  Thus, in
> order to be admissible under one of the
> exceptions, evidence of other crimes must
> tend to prove a material fact and its
> probative value "must outweigh the prejudice

- 15 -

inherent in proving that an accused has committed other crimes."

Rodriguez v. Commonwealth, 18 Va. App. 277, 280-81, 443 S.E.2d 419, 422 (1994) (en banc) (citations omitted).

Joyce Davis testified, over objection, that two weeks before the shooting Abbott and the victim visited Davis at her home. Just before leaving, Abbott ordered the victim to go start the truck. When the victim refused, Abbott became frustrated and forcefully struck the victim in the face. On cross-examination, Abbott admitted that he hit the victim on that occasion, but he maintained that it was a "playful" tap.

Here, the evidence tended to establish the nature of the marital relationship, which Abbott testified was a loving one, and tended to show Abbott's feelings toward his wife, which he later testified was devotion. Evidence showing the relationship between Abbott and his wife was probative to show Abbott's motive and intent. See Callahan v. Commonwealth, 8 Va. App. 135, 141-42, 379 S.E.2d 476, 480 (1989) (finding that evidence of defendant's threats and assaults on wife and children was properly admitted to show the defendant's relationship with his victims, which proves motive and intent). The evidence that Abbott struck his wife falls within an exception to the rule barring the admission of evidence of prior bad acts, and the trial judge did not err by finding that the probative value of the testimony outweighed any prejudicial effect. See Rodriguez,

18 Va. App. at 280-81, 443 S.E.2d at 422.  Thus, the trial court did not err by admitting the testimony.

For the foregoing reasons, we affirm the convictions.

<u>Affirmed.</u>