COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Coleman and Willis
Argued at Salem, Virginia


JOSE ALVAREZ
                                                OPINION BY
v.   Record No. 1524-96-3      CHIEF JUDGE NORMAN K. MOON
                                             MAY 27, 1997
COMMONWEALTH OF VIRGINIA

            FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                       James F. Ingram, Judge

            Lawrence D. Gott (Office of the Public
            Defender, on brief), for appellant.

            Marla Graff Decker, Assistant Attorney
            General (James S. Gilmore, III, Attorney
            General, on brief), for appellee.


     Jose Alvarez appeals from his conviction of possession of

marijuana with intent to distribute in violation of Code

§ 18.2-248.  Alvarez asserts that the trial court erred in: (1)

failing to suppress marijuana evidence obtained in a warrantless

search that was based upon a narcotics dog "alerting" on a

package being transported by bus; and (2) admitting an analysis

of the marijuana evidence for which the Commonwealth failed to

establish a proper chain of custody.

     Holding that: (1) the marijuana evidence was properly

obtained under the automobile exception to the warrant

requirement; and (2) that the evidence was sufficient to prove

with reasonable certainty that the marijuana seized in New

Orleans was not altered, substituted, or contaminated before

Alvarez received it in Danville and before it was analyzed, we

affirm.

On December 3, 1995, Detectives Clarence Wethern and George Chenevert of the New Orleans Police Department's Narcotics "K-9" section, investigated a Greyhound bus at the New Orleans Union Passenger Terminal. While Chenevert's narcotics dog, "K-9 Robbie," was inspecting one of the bus' cargo areas, the dog "hit" or "alerted" on a cardboard U-Haul box by biting into the box. While K-9 Robbie's trained indication for narcotics was a "scratch," the dog occasionally bit into objects it hit upon.

Chenevert, following K-9 unit procedure, attempted to distract the dog from the box by throwing a narcotics-scented toy into the cargo area. The dog did not release the box and Chenevert had to move around to the other side of the bus to the opposite cargo area entrance in order to reach the dog. By the time Chenevert reached the opposite side of the bus and pulled the dog off, the box had been torn "pretty bad[ly]." As a result of the tearing, Chenevert could see two large round wheels and two smaller "bricks," which he suspected, and which were later determined, to be marijuana. Chenevert had fifteen years of experience as a police officer and testified that he recognized both the look and smell of marijuana.

Chenevert seized the box and placed it on a luggage cart to which he had leashed his dog. As Chenevert began to roll the cart toward the terminal, the dog again attacked the package, causing it to rip open and the contents to fall to the ground. Wethern took control of the cart, box, and the contents, while

- 2 -

Chenevert returned the dog to his truck.

Inside the bus station, Wethern and Chenevert noticed the package's mailing address indicated it was being shipped to Alvarez at an address in Martinsville, Virginia. Wethern telephoned the Martinsville police and between 8:50 p.m. and 9:50 p.m., spoke with Special Agent Moore of the Virginia State Police, who agreed to take over the investigation of the matter. The bus, on which the package was discovered, left the station at 7:30 p.m. Wethern informed Moore that he would rebox the package and ship it to Greensboro, N.C., the nearest airport to Moore, so Moore would receive the package before the bus arrived in Martinsville. Wethern sealed the original box with evidence tape and put it in another box, addressed to Moore. No flight was available that evening, so Wethern stored the box in the New Orleans Police Department evidence room where Chenevert picked it up the next morning. Chenevert then put the box on a 5:00 a.m. Delta Airlines flight and telephoned Moore, giving him the flight information.

Moore met an agent of the North Carolina Bureau of Investigation in Greensboro. The two officers took possession of the box at approximately 4:00 p.m., as the box was removed from the arriving airplane. Moore took the package to the Airport Police Authority's office and opened it. Inside was a sealed box which contained a torn U-Haul box, two wheels of marijuana, two bricks of marijuana, and the original Greyhound "bus bill." Moore testified that he could detect the odor of marijuana as he

opened the package.  Moore repackaged all of the marijuana in a new U-Haul box, relabeled, and readdressed the box according to the information contained on the original box.  Moore took the repackaged box, the old U-Haul box, the bus bill, and the box that had been used to ship the package from New Orleans, and left the Greensboro Airport at approximately 5:00 p.m.  He arrived at the Danville Airport at approximately 5:30 p.m. and proceeded to a Hardees restaurant in Danville, a scheduled meal stop for the bus on which the package had been found.  At approximately 5:45 p.m. the bus arrived, and Moore placed the new package in the cargo area of the bus.  Moore then boarded the bus and rode the remaining distance to the Danville bus station.

At the bus station, Moore exited the bus, gave the bus bill to Virginia State Police Agent Lyon, who was posing as a baggage handler, and went inside with Lyon to wait for the box to be picked up.  Detective Jerry Chaney of the Danville police retrieved the package from the bus, brought it into the station, and placed it in a back room in the baggage storage area.  At approximately 6:25 p.m., Alvarez and Jose Benitez arrived and presented a copy of the bus bill to the ticket agent in order to collect the package.  The ticket agent went to the back and motioned to Lyon and Chaney.  Chaney retrieved the package, to which he had attached the original bus receipt, and took it to the ticket counter.  Alvarez signed the receipt for the box and had Benitez retrieve it from the luggage counter.  Both men then proceeded to a car in the parking lot in which a woman was

- 4 -

sitting.  The police approached and asked the three individuals to accompany them to the police station.  Chaney took possession of the box.

## Admission of Marijuana Evidence

Alvarez asserts that the trial court erred in admitting the marijuana because the box containing the marijuana had been seized and searched by police without a warrant.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  There are, however, certain well established exceptions to the Fourth Amendment's warrant requirement.  Among them is the "automobile exception," articulated by the Supreme Court in Carroll v. United States, 267 U.S. 132 (1925), in which the Court recognized that there is

> a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

Id. at 153.  Accordingly, the Carroll Court held that "a warrantless search of an automobile based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle did not contravene the Warrant Clause of the Fourth

Amendment."  California v. Acevedo, 500 U.S. 565 (1991) (citing Carroll, 267 U.S. at 158-59).

While Carroll clearly established an automobile exception, its progeny developed along two conflicting lines, creating confusion concerning proper application of the exception. Compare United States v. Ross, 456 U.S. 798 (1982), with United States v. Sanders, 442 U.S. 753 (1979), and United States v. Chadwick, 433 U.S. 1 (1977).

In Chadwick and Sanders, the Court held that where police have probable cause to search a closed container within a vehicle, but do not have probable cause to search the vehicle itself, the automobile exception would not permit a warrantless search of the container.  Chadwick, 433 U.S. at 13; Sanders, 442 U.S. at 765.  However, in Ross, the Court held that under the Carroll doctrine, "if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  456 U.S. at 823.  Ross dissenters rejected the holding as inconsistent with the Chadwick-Sanders line, and opined that they could not see why a container which police had probable cause to search, and which was found in a car, was "more private, [or] less difficult for police to seize and store, or in any other relevant respect [was] more properly subject to the warrant requirement, than a container that police discover in a probable cause search of an entire automobile."  456 U.S. at 839-40.

Recognizing the doctrinal conflicts present in the <u>Carroll</u> progeny, and noting the virtue of providing clear and unequivocal guidelines for law enforcement, the Court, in <u>Acevedo</u>, held that "the Fourth Amendment does not compel separate treatment for an automobile search that extends only to a container within the vehicle" and therefore

> [t]he interpretation of the <u>Carroll</u> doctrine set forth in <u>Ross</u> now applies to all searches of containers found in an automobile. In other words, the police may search without a warrant if their search is supported by probable cause.

>     *     *     *     *     *     *     *

> Until today, this Court has drawn a curious line between the search of an automobile that coincidentally turns up a container and the search of a container that coincidentally turns up in an automobile. The protections of the Fourth Amendment must not turn on such coincidences. We therefore interpret <u>Carroll</u> as providing one rule to govern all automobile searches. The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.

500 U.S. at 579-80.

Here, the trial court admitted into evidence marijuana that had been found in a box in the cargo bay of a bus. In considering a trial court's ruling on a suppression motion, we view the evidence in the light most favorable to the Commonwealth and the decision of the trial judge will not be disturbed unless plainly wrong. <u>Greene v. Commonwealth</u>, 17 Va. App. 606, 608, 440 S.E.2d 138, 139 (1994). Chenevert's inspection of the cargo bay of the bus with his narcotics dog did not require a search

warrant because the use of a trained narcotics dog to detect drug contraband in closed containers does not constitute a "search" for Fourth Amendment purposes.  See United States v. Place, 462 U.S. 696 (1983).  K-9 Robbie's "hit" on the U-Haul box provided Chenevert with probable cause to believe that the box contained a controlled substance.  See Limonja v. Commonwealth, 8 Va. App. 532, 544, 383 S.E.2d 476, 483 (1989) (en banc), cert. denied, 495 U.S. 905 (1990).  Because Chenevert had probable cause to search the container and the container was located in a vehicle, the "automobile exception," as articulated in Acevedo, empowered Chenevert to seize and search the box without first obtaining a warrant.

The fact that the automobile in which the box was found was a bus instead of a car does not preclude application of the automobile exception.  In California v. Carney, the Supreme Court held that the automobile exception extends to any vehicle that has the attribute of mobility and in which a lesser expectation of privacy exists.  471 U.S. 386 (1985) (holding that the automobile exception extends to mobile homes if they are not at a fixed location).

Holding that the marijuana evidence was properly obtained under the automobile exception, we find the trial court did not err in admitting the marijuana evidence.  Accordingly, we do not reach the question of whether the marijuana could have been properly seized under the plain view exception to the warrant requirement.

<u>Chain of Custody</u>

Alvarez asserts that the trial court also erred in admitting the analysis of the marijuana seized by Chenevert because the Commonwealth failed to establish an "unbroken chain of custody of the repackaged marijuana from New Orleans to the chemist who did the analysis."  He further asserts that the Commonwealth could not rely upon Code § 19.2-187.01 to prove the chain of custody within the laboratory in which the marijuana was analyzed.  We find Alvarez's arguments unpersuasive and without merit.

As previously noted, on appeal we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  <u>Higginbotham v. Commonwealth</u>, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  Further, the "admissibility of evidence is within the broad discretion of the trial court," <u>Crews v. Commonwealth</u>, 18 Va. App. 115, 118-19, 442 S.E.2d 407, 409 (1994), and the defendant bears the burden of proving the trial court's admission of evidence constitutes reversible error.  <u>Dunn v. Commonwealth</u>, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995).

In order to introduce evidence of the chemical properties of the marijuana admitted into evidence, the Commonwealth was required to present "proof of the chain of custody" of the marijuana, "including `a showing with reasonable certainty that the item [had] not been altered, substituted, or contaminated

prior to analysis, in any way that would affect the results of the analysis.'" Crews, 18 Va. App. at 118-19, 442 S.E.2d at 409 (citations omitted). However, in proving the chain of custody, the Commonwealth "is not required to exclude every conceivable possibility of substitution, alteration or tampering.'" Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991) (citation omitted). The Commonwealth must, instead, account for every "`vital link in the chain of possession.'" Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971) (citation omitted).

Here, the record reflects that the only time the marijuana seized by Chenevert was not under the direct control of an officer of the law, until its delivery to an authorized laboratory agent, was during its shipment from New Orleans to Greensboro. After Wethern delivered the package to Delta Airlines for shipment to Greensboro, he contacted Moore and advised him of the flight number, anticipated time of arrival, and the Delta Airlines shipping number assigned to the package. Moore was personally present in Greensboro to receive the package and was in attendance when the package was removed from the "belly" of the airplane. Upon receiving the package, Moore opened the sealed package and found that it contained two wheels and two bricks of marijuana inside a ripped U-Haul box sealed with evidence tape. We hold this evidence was sufficient to support the trial court's finding that the vital links in the chain of custody of the marijuana were established.

We also reject Alvarez's additional assertion that, because the Commonwealth failed to timely file the certificate of analysis and had to "rely on the testimony of the chemist to prove the marijuana," it was not entitled to rely on Code § 19.2-187.01 to avoid establishing the chain of custody of the marijuana within the laboratory.

Code § 19.2-187.01 provides that a certificate of analysis from any authorized laboratory is prima facie evidence of the laboratory's custody of the evidence. Unlike Code § 19.2-187, § 19.2-187.01 does not require filing of the certificate seven days prior to trial as a prerequisite to admission for purposes of proving custody within the laboratory. Further, Code § 19.2-187.01 specifically provides that

> [a] report of analysis duly attested by the
> person performing such analysis or
> examination in any [authorized] laboratory
> . . . shall be prima facie evidence in a
> criminal or civil proceeding as to the
> custody of the material described therein
> from the time such material is received by an
> authorized agent of such laboratory until
> such material is released subsequent to such
> analysis or examination.

Here, the authorized agent attested to the analysis of the marijuana introduced into evidence. Therefore, the certificate of analysis was admissible to prove the chain of custody within the laboratory. Holding that the evidence was sufficient to prove the chain of custody and that the certificate of analysis was properly admitted to prove the chain of custody within the laboratory, we hold the trial court did not err in admitting

- 11 -

analysis of the marijuana seized by Chenevert.

Accordingly, holding that the marijuana evidence was properly obtained under the automobile exception to the warrant requirement and that the evidence was sufficient to sustain the trial court's finding that a proper chain of custody was established, we affirm.

<u>Affirmed.</u>