COURT OF APPEALS OF VIRGINIA

Present: Judges Annunziata, Bumgardner and Senior Judge Hodges
Argued at Alexandria, Virginia


DANIEL EDWARD JACKSON

MEMORANDUM OPINION[*] BY
v.   Record No. 0075-98-4          JUDGE WILLIAM H. HODGES
                                   FEBRUARY 23, 1999
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

Elwood Earl Sanders, Jr., Director
Capital/Appellate Services (Public Defender
Commission, on briefs), for appellant.

Marla Graff Decker, Assistant Attorney General
(Mark L. Earley, Attorney General; Lisa R.
McKeel, Assistant Attorney General, on brief),
for appellee.


Daniel Edward Jackson (appellant) was convicted in a jury

trial of arson. He contends that the trial court erred by (1)

allowing expert opinion evidence as to whether evidence at the

fire scene was consistent with the use of an accelerant, and (2)

admitting Commonwealth's Exhibit 6 over a chain of custody

objection. For the following reasons, we find no error and

affirm the conviction.

## Facts

On February 8, 1997, Mickey Gaines was awakened at 4:00 a.m.

by a "loud bang." Gaines saw that her stepfather's garage was on

fire. Gaines testified that earlier during the week of the fire,

her stepfather, Frank Coram, had accused appellant of stealing

―――――――――――――――――――

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

several hundreds of dollars worth of coins from Coram's garage and had called the sheriff.  After the accusation, appellant drove off in Gaines's car.  Gaines did not speak to appellant again between the day of the argument and the day of the fire.

The garage had no electricity, was not wired for electricity, and had no heating source.  No gasoline or oil was stored in the garage.  The motorcycles kept in the garage had a small amount of gasoline in their tanks.

Assistant Fire Marshal Mike Taylor investigated the fire. Taylor examined the fire patterns and looked for patterns of heat and ignition sources, debris, and burn patterns.  Taylor found patterns on the floor "indicative of some form of ignitable liquid that can be a flammable or combustible liquid that had been poured."  He also found evidence of "a flammable or combustible liquid that had been poured."  Underneath the step, Taylor found "charring which was indicative of a fire that's looking for more fuel.  The fire is hungry.  It's looking for fuel and it's actually following a liquid that has run underneath that wood where it would not normally travel."  Taylor also found burn marks in a carpeted area that were indicative of the use of an ignitable liquid.

Fire Marshal Captain Patrick Brandenburg took a wooden debris sample that showed characteristics of an ignitable liquid, which was later tested and found to contain a petroleum product.

On February 12, 1997, Taylor and Brandenburg went to interview appellant at David Necessary's house, but found that

appellant abruptly exited a back door. They later found appellant crouched behind a dumpster. Appellant denied any knowledge of the fire. However, appellant told Charles Hill of his plan to "burn a shed down with some old engines in it." Appellant later told Hill that he had burned down the shed. Appellant told Gregory Necessary that he "got even on somebody" and had "burned them out." Appellant acknowledged possession of the can of gasoline behind the wood pile at David Necessary's house.

At trial, Taylor explained that the burn patterns were "consistent with the presence of accelerants," which in this case, he could narrow down to an ignitable liquid. Brandenburg also testified that the burn patterns were consistent with the use of accelerants.

I.

Appellant contends that the trial court committed reversible error by allowing expert witnesses, Taylor and Brandenburg, to testify that the burn patterns they observed and photographed at the scene of the fire were consistent with the "presence" of an accelerant, i.e., a flammable liquid. Appellant argues that this expert testimony violated the "ultimate issue of fact" rule. We disagree.

In Virginia, "[a]n expert witness may express an opinion relative to the existence or nonexistence of facts not within the common knowledge, but 'the admission of expert opinion upon the ultimate issue of fact is impermissible because it invades the

- 3 -

function of the fact finder.'" Zelenak v. Commonwealth, 25 Va. App. 295, 299, 487 S.E.2d 873, 875 (1997) (en banc) (quoting Llamera v. Commonwealth, 243 Va. 262, 264, 414 S.E.2d 597, 598 (1992)).  Whether fire is incendiary or accidental is an ultimate issue of fact to be determined by the fact finder.  See Ramsey v. Commonwealth, 200 Va. 245, 250-51, 105 S.E.2d 155, 159 (1958). However,

> [t]he witness may detail the facts and
> observations which came to his attention
> while investigating the fire and may give his
> or her conclusions or opinions on such
> matters as where the fire started, the cause
> or source of ignition, how it proceeded, and
> whether and why certain accidental causes can
> be eliminated.  However, the court must
> "permit the jurors to draw their own
> conclusions as to the cause" of the fire.

Callahan v. Commonwealth, 8 Va. App. 135, 139, 379 S.E.2d 476, 479 (1989) (citation omitted).

The testimony of Taylor and Brandenburg as to the "presence" of an accelerant at the fire scene did not constitute the ultimate issue of fact.  Rather, their testimony related to observations which came to their attention while investigating the fire.  Their testimony did not constitute an opinion as to the cause of the fire.  Accordingly, the trial court did not err in admitting the testimony of Taylor and Brandenburg regarding the "presence" of an accelerant.

## II.

Brandenburg testified that on February 8, 1997, he collected a sample of wooden debris from the entrance door seal and step

- 4 -

area at the fire scene to be tested for the presence of a flammable liquid.  While wearing gloves, Brandenburg placed the sample in a sterile metal can, and marked the can with a case number, his initials, and the date.  Brandenburg sealed the can, but did not tape it at that time because he intended to perform a "fire canine" check on the sample within a couple of days.  Thereafter, Brandenburg secured the can in his vehicle.  He then transported it to the Leesburg fire marshal's office and locked it in an evidence locker in a secure evidence room.  Brandenburg, the Chief Fire Marshal and Captain Mitchell were the only persons who possessed keys to the locker.

After a canine test of the sample on February 10, 1997, Brandenburg sealed the can, taped it with orange tape, and locked it in the evidence locker.  During the canine test, Brandenburg did not remove any of the contents of the can.  On February 19, 1997, Brandenburg transported the sample to the Northern Regional Forensic Laboratory located in Fairfax, Virginia ("the Fairfax laboratory").  The Fairfax laboratory received the sealed sample under Brandenburg's signature and kept the sample at the lab until September 9, 1997.  During the time the sample remained at the Fairfax laboratory, Robin McLaughlin, a forensic scientist, performed a test on the sample to determine whether a flammable liquid was present.

On September 9, 1997, Eileen Davis, the forensic section chief in the trace evidence division of the Commonwealth of Virginia Forensic Science Laboratory located in Richmond,

Virginia ("the Richmond laboratory"), received the sample, which had been at the Fairfax laboratory, from Taylor. Taylor had travelled to the Fairfax laboratory and retrieved the sample, which he then brought to Davis in Richmond. When Taylor received the sample at the Fairfax laboratory, it was in a can sealed with yellow evidence tape. The orange tape that had been placed on the can by Brandenburg in February 1997 had been breached when the Fairfax laboratory tested the sample. The Fairfax laboratory placed the yellow tape on the can after it tested the sample. On September 9, 1997, Davis again tested a previously extracted portion of the sample, which the Fairfax laboratory had placed in a small glass vial inside the can. Based upon her review of McLaughlin's notes, Davis confirmed that she performed the same type of test on the extract as McLaughlin had performed at the Fairfax laboratory, with similar results. Davis then rendered a report stating that the extract contained gasoline. Davis returned the sample to Taylor on September 9, 1997. Taylor transported the sample back to the Leesburg fire marshal's office and secured it in a locked evidence locker until the morning of trial. On the morning of trial, Taylor removed the can from the evidence locker and transported it to the courthouse.

The trial court refused to admit the certificates of analysis produced by the Fairfax laboratory and the Richmond laboratory into evidence because the Commonwealth failed to file them within seven days prior to trial as required by Code § 19.2-187. However, the trial court marked the certificates of

analysis as Commonwealth's Exhibits 12 and 13 for identification purposes only and ruled that based upon the certificates, the Commonwealth was entitled to the prima facie presumption of the chain of custody provided by Code § 19.2-187.01. The trial court allowed Davis to testify regarding her testing of the sample and her knowledge of the testing which was performed at the Fairfax laboratory. The trial court ruled that the fact finder was entitled to weigh the evidence, including Davis's testimony.

Appellant contends that the trial court erred in relying upon Code § 19.2-187.01 to prove the chain of custody of the sample. In addition, appellant argues that the chain of custody was fatally flawed because Davis could not determine whether McLaughlin's alteration of the sample during its testing affected Davis's results.

"[T]he 'admissibility of evidence is within the broad discretion of the trial court,' and the defendant bears the burden of proving the trial court's admission of evidence constitutes reversible error." Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997) (citations omitted).

> In order to introduce evidence of the chemical properties of the [sample] admitted into evidence, the Commonwealth was required to present "proof of the chain of custody" of the [sample], "including 'a showing with reasonable certainty that the item [had] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'" However, in proving the chain of custody, the Commonwealth "[']is not required to exclude every conceivable possibility of substitution, alteration or tampering.'" The

- 7 -

> Commonwealth must, instead, account for every
> "'vital link in the chain of possession.'"

Id. at 776-77, 485 S.E.2d at 650 (citations omitted).

Here, Brandenburg collected the sample, marked and sealed the can, secured it in a locked evidence locker, and then personally delivered it to the Fairfax laboratory. Brandenburg's testimony accounted for the sample until he left it at the Fairfax laboratory. The Fairfax laboratory received the sample under Brandenburg's signature on February 19, 1997, and it remained there until Taylor retrieved it on September 9, 1997, and personally transported it to Richmond, where Davis again tested the extract and then gave the sample back to Taylor, who accounted for it until it was presented at trial. The trial court did not err in allowing the Commonwealth to rely on the certificates of analysis to establish prima facie evidence of the chain of custody of the sample from the time Brandenburg left it at the Fairfax laboratory until Taylor retrieved and transported it to the Richmond laboratory. See id. at 777-78, 485 S.E.2d at 651 (holding that although certificates of analysis were not timely filed, the Commonwealth was entitled to rely upon Code § 19.2-187.01 to avoid establishing chain of custody within the laboratory). In Alvarez, we recognized that "[u]nlike Code § 19.2-187, § 19.2-187.01 does not require filing of the certificate seven days prior to trial as a prerequisite to

- 8 -

admission for purposes of proving custody with the laboratory."
Id. at 777, 485 S.E.2d at 651.[1]

Here, the authorized agents attested to the analysis of the
sample introduced into evidence.  Therefore, the certificates of
analysis were admissible to prove the chain of custody within the
laboratories.  Thus, because the evidence was sufficient to prove
the chain of custody and the certificates of analysis were
properly relied upon by the trial court to prove the chain of
custody within the laboratories, the trial court did not err in
admitting the sample and Davis's testimony regarding her analysis
of the sample.  Taking the evidence regarding the chain of
custody into account, the fact finder was entitled to determine
what weight, if any, was to be given to Davis's testimony in
light of the fact that she re-tested a sample previously tested
at the Fairfax laboratory.  "The weight which should be given to
evidence and whether the testimony of a witness is credible are

---

[1]     Code § 19.2-187.01 specifically provides that

> "[a] report of analysis duly attested by the
> person performing such analysis or
> examination in any [authorized]
> laboratory . . . shall be prima facie
> evidence in a criminal or civil proceeding as
> to the custody of the material described
> therein from the time such material is
> received by an authorized agent of such
> laboratory until such material is released
> subsequent to such analysis or examination."

Alvarez, 24 Va. App. at 777-78, 485 S.E.2d at 651 (quoting Code
§ 19.2-187.01).

questions which the fact finder must decide."  Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986).

Accordingly, the trial court's judgment is affirmed.

Affirmed.