COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Chesapeake, Virginia


RICHARD LEE PARHAM, JR.

MEMORANDUM OPINION* BY
v.   Record No. 2798-99-1        JUDGE JAMES W. BENTON, JR.
                                          FEBRUARY 6, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
N. Prentis Smiley, Jr., Judge

F. Winslow Young (Wanda N. Allen, Attorney at
Law, Inc., on brief), for appellant.

Eugene Murphy, Assistant Attorney General
(Mark L. Earley, Attorney General, on brief),
for appellee.


The trial judge convicted Richard Lee Parham, Jr., of

possession of cocaine in violation of Code § 18.2-250(A). Parham

contends the trial judge erred in admitting the certificate of

analysis that identified the substance as cocaine. We conclude

that the trial judge did not err, and we affirm the conviction.

                                  I.

At trial, State Trooper P.N. Gallaccio testified that at

4:00 a.m. he approached a car that was parked on the right

shoulder of a highway. Parham was alone at the car, which had its

hazard lights on and its hood up. Gallaccio noticed that Parham

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

had a strong odor of alcohol and bloodshot eyes that were barely open.  Parham denied having any identification.  Gallaccio testified that Parham gave him consent to search him.

As Gallaccio searched Parham, he believed Parham was gripping something in his left hand, which was in his pocket.  He was unable to get Parham to remove his left hand from his pocket.  When Gallaccio informed Parham that he was arresting Parham for public intoxication, Parham refused to put his hand behind his back.  During a struggle that ensued as Gallaccio attempted to arrest Parham, Parham's left hand was close to his mouth.  After Gallaccio subdued Parham, he noticed a white powdery substance in Parham's mouth.

Gallaccio handcuffed Parham's hands behind his back, put Parham in the passenger seat of Gallaccio's patrol car, and placed a seat belt over Parham.  Gallaccio then searched Parham's car and found a glass pipe on the left side of the driver's seat. Gallaccio testified that he put the pipe in a sealed evidence bag and placed the bag on the driver's side floorboard in his patrol car.  Gallaccio testified that he asked another trooper, who had arrived on the scene, to watch Parham.

After Gallaccio returned to Parham's car and obtained the registration document, he returned to his patrol car.  Gallaccio then noticed that the evidence bag was missing, that Parham was squirming, and that Parham's seat belt was unbuckled.  When Gallaccio asked Parham to get out of the patrol car, he noticed

-

that Parham's fingers were cut.  Gallaccio found the evidence bag "shoved between [the passenger] seat and the back rest . . . where [Parham's] hands would be if they were handcuffed."  The pipe in the bag was broken.  Gallaccio retrieved the bag with the broken pipe, re-packaged the pipe, and later sent it to the Division of Forensic Science for analysis.

After the prosecutor moved to admit in evidence the certificate of analysis, the trial judge permitted Parham's counsel to cross-examine Gallaccio.  Gallaccio testified that he routinely puts all arrestees in the front passenger seat of his patrol car and that he always checks between the seat after the arrestees leave his car.  Gallaccio admitted the possibility that trace amounts of cocaine might be in the seat cushions and that trace amounts of cocaine could have been transferred into the seat cushions from previous arrestees.  He also testified that the pipe had rubbed against the seat after Parham seized it.  Gallaccio also testified that no other suspect had placed cocaine between the car's seats and that he was the only officer to use this patrol car.

Over Parham's objection, the trial judge admitted into evidence the certificate of analysis indicating the presence of cocaine on the glass pipe.  At the conclusion of the evidence, the judge convicted Parham of possession of cocaine.  This appeal followed.

-

II.

Parham argues that the chain of custody had been broken and that no evidence proved the cocaine was on the pipe when Gallaccio removed it from Parham's car.  Thus, he contends the trial judge erred in admitting in evidence the certificate of analysis.  We disagree.

Proof of a proper chain of custody of evidence is necessary before a certificate of analysis of that evidence may be admitted in evidence.  See Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997).

> "The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested."
>
> "In offering this evidence, the Commonwealth, however, 'is not required to exclude every conceivable possibility of substitution, alteration or tampering.' Instead, the Commonwealth [is] required to establish with 'reasonable assurance' that the evidence analyzed and presented at trial was in the same condition as it was when obtained by police."
>
> "Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight to be given the evidence."

Brown v. Commonwealth, 21 Va. App. 552, 555-56, 466 S.E.2d 116, 117 (1996) (citations omitted).  In short, "[w]hen a party offers proof of the chemical properties of an item in evidence, 'authentication requires proof of the chain of custody,

-

including "a showing with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis."'" Crews v. Commonwealth, 18 Va. App. 115, 118-19, 442 S.E.2d 407, 409 (1994) (citations omitted).

The evidence in this case fully accounted for every "vital link in the chain." Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971). Trooper Gallaccio recovered the pipe from Parham's car, put it in a sealed bag, and placed it in his patrol car. The evidence also proved that Parham was alone in the patrol car and that no one else had approached it. The only inference to be drawn from this evidence is that Parham seized the bag and secreted it behind him. Thus, Parham was in possession of the pipe when it was placed behind the seat and broken. After Parham seized the pipe, which was inside the bag, the officer obtained it from him. No break in the chain of custody occurred after this happened.

"[T]he Commonwealth was required to establish with 'reasonable assurance' that the evidence analyzed and presented at trial was in the same condition as it was when obtained by police." Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991). The likelihood that the pipe was contaminated by Parham's conduct only pertains to the weight the trial judge might give the evidence. It has no bearing on the chain of custody and, therefore, does not bar its admissibility.

-

For these reasons, we hold that the trial judge did not err in admitting in evidence the certificate of analysis. Accordingly, we affirm the conviction.

<u>Affirmed</u>.

-