COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, Humphreys and McClanahan
Argued at Richmond, Virginia


CARL ANTHONY SMITH

                                          MEMORANDUM OPINION[*] BY
v.        Record No. 2268-02-2            JUDGE ROSMARIE ANNUNZIATA
                                          FEBRUARY 10, 2004
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                         James F. D'Alton, Jr., Judge

            Carol I. Zacheiss, Assistant Public Defender (Office of the Public
            Defender, on brief), for appellant.

            John H. McLees, Senior Assistant Attorney General (Jerry W.
            Kilgore, Attorney General; H. Elizabeth Shaffer, Assistant Attorney
            General, on brief), for appellee.


        Carl Anthony Smith appeals his conviction in a bench trial for distribution of cocaine and

distribution of cocaine within 1,000 feet of school property on the ground that the trial court

erred in denying his motion to suppress the evidence.  For the reasons that follow, we affirm.

                                    I.  Background

        We review the evidence on appeal, together with reasonable inferences that may be

drawn from that evidence, in the light most favorable to the Commonwealth because it prevailed

below.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  So

viewed, the evidence established that on February 12, 2002, Trooper James Worley of the

Virginia State Police, acting as an undercover officer in the City of Petersburg, was engaged in

making purchases of illegal drugs.  At approximately 5:30 p.m., Worley saw Carl Anthony Smith

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

standing beside a wooden fence at the corner of Crater Road and East Washington Street, near an Econo Lodge and a Crown service station. Worley was a passenger in a vehicle when making these observations. Worley looked at Smith and nodded his head. Smith nodded back. After Worley informed other police units that he was going to proceed on foot, he exited the car and walked into the Crown service station store.

Smith followed Worley into the store where he bought a pack of Philly blunt cigars. Smith then followed Worley out of the store as he exited. The two engaged in a conversation regarding the purchase of a "fifty rock" of crack cocaine. After Smith assured Worley that he had the drugs, the two men walked to a small house with a two-foot brick wall to its left and to its right. Worley instructed Smith to sit on one side of the wall, and he sat on the other, approximately three feet away. Worley told Smith to put the drugs down on his side of the wall, and Worley laid the purchase money, which had been photocopied before these events, on his side of the wall. Smith walked over, picked up the money Worley had laid down on his side of the wall, walked across the street, and entered the Econo Lodge. Worley retrieved the crack cocaine from Smith's side of the wall, re-entered his vehicle, and radioed a description of Smith to the police. Smith was subsequently arrested, and Worley delivered the cocaine to Detective Emmanuel Chambliss.

At trial, Chambliss identified the drugs that Worley gave to him. Chambliss stated that Worley told him that the drugs were purchased from Smith. Chambliss placed the suspected cocaine in an evidence bag, sealed it, and assigned case number 02007159 to it. He then put the sealed bag into a temporary evidence locker in the police department's vice office. The evidence locker was a filing cabinet secured with individual padlocks. Only Chambliss had the key to the particular filing cabinet he used to store the drugs. After the evidence was processed, Chambliss testified that he personally delivered it to Sergeant Crowder, the head of the property division.

As the individual in charge of the forensic division of the Petersburg Police Department, Crowder was responsible for handling the evidence submitted to the police, transporting it to and from the state laboratory for analysis, and maintaining it securely in the property room in his office. Crowder identified Commonwealth's Exhibit 1, case number 02007159, as the drugs that he took to the state laboratory for examination on March 14, 2002. Crowder's department had assigned it the inventory control number 02-0231 and the bin location code C-1-5. In addition to Crowder, only Investigator Reed and a forensic technician named Fenicia Green had access to the facility. Crowder retrieved the evidence from the laboratory on April 5, 2002, and returned it to inventory control 02-0231, in bin C-1-5.

The police department property receipt showed that the evidence came from the vice office locker and that it was signed into the property room by Investigator Reed on February 27, 2002, at 2:00 p.m. Reed's handwriting on the receipt was identified by Crowder who explained that the person who receives the evidence signs the receipt. Crowder's testimony in this regard contradicted that of Chambliss, who testified that Crowder personally received the evidence from him when he delivered it to the property section.

At trial, Crowder identified the certificate of analysis, stating that it related to the drugs he had brought to the state laboratory for analysis. The police case number was the same as the one assigned. He also testified to what was in the sealed plastic evidence bag, to wit: "one bag of off-white solid material, which is what I submitted to the lab." He then read the results of the examination into evidence.

Smith objected to the admission of the certificate of analysis and the cocaine on the ground that Crowder testified that Chambliss had not personally handed him the drugs. The trial court overruled the objection, noting:

> [T]here's got to be some evidence of alteration, substitution, or
> tampering, and there's a presumption of regularity in handling

- 3 -

> exhibits by public officials.  I am satisfied that . . . the
> Commonwealth has shown with reasonable certainty there's been
> no alteration or substitution.

> \*       \*       \*       \*       \*       \*       \*

> I am satisfied that this is substantial compliance . . . the
> Commonwealth is not required to exclude every possible
> alteration.

Smith presented no evidence in his defense and, after both he and the Commonwealth rested, he presented a motion to strike the evidence, alleging, *inter alia*, a fatal break in the chain of custody.  The motion was denied.  Smith was convicted, and this appeal followed.

## II.  Analysis

Evidence relating to the chain of custody when challenged on appeal is reviewed in the light most favorable to the Commonwealth, granting it all inferences that are fairly deducible. Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997).  The admissibility of evidence is a matter which falls within the "broad discretion of the trial court." Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994) (citing Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)).  In this case, Smith, the party who objected to the admission of the cocaine and the certificate of analysis, bears the burden of proving the trial court erred.  Dunn v. Commonwealth, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995).

To satisfy the chain of custody requirement that attaches to the admissibility of evidence that has passed through several hands, the proponent must show "'with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'"  Crews, 18 Va. App. at 119, 442 S.E.2d at 409 (quoting Reedy v. Commonwealth, 9 Va. App. 386, 387, 388 S.E.2d 650, 650-51 (1990)) (alteration in original).  "The Commonwealth is not required 'to exclude every conceivable possibility of

substitution, alteration or tampering,'" Alvarez, 24 Va. App. at 776, 485 S.E.2d at 650 (quoting Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991)), but it must be able to "account for every 'vital link in the chain of possession.'" Id. at 777, 485 S.E.2d at 650 (quoting Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971)). "The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." Robertson, 12 Va. App. at 857, 406 S.E.2d at 419. When possession and treatment of the evidence analyzed is left to conjecture, the chain of custody is incomplete and the evidence inadmissible. Id.

Here, Trooper Worley unequivocally testified that he delivered the cocaine he purchased from Smith to Detective Chambliss. Chambliss testified that he personally delivered the drugs to Sergeant Crowder. However, Crowder denied he received the drugs from Chambliss, stating that Investigator Reed was the individual in the property section who actually received the drugs, as evidenced by Reed's signature on the receipt.

Smith contends the discrepancy in the evidence respecting who received the drugs in the property section leaves open to conjecture whether the drugs were tampered with before the analysis was performed. He argues that this failure, together with Worley's failure to identify Commonwealth's Exhibit 1 as the drugs Smith sold him, defeats the chain of custody. We find Smith's arguments to be without merit.

First, Smith failed to object at trial to the admission of the cocaine evidence on the ground that Worley did not identify Commonwealth's Exhibit 1 as the drugs Smith sold him. The claim is thus barred under this Court's Rule 5A:18.

Second, we find nothing in the record that would support the conclusion that it is "as likely as not that the evidence analyzed was not the evidence received." Robinson, 212 Va. at 138, 183 S.E.2d at 180. The evidence in this case established that Worley delivered the drugs

purchased from Smith to Chambliss, who packaged and labeled the evidence bag, sealed it, and secured it in a temporary evidence locker compartment to which he alone had access. Chambliss delivered the evidence bag to the property section of the forensics department, and Crowder identified it as the evidence received by Reed, an individual who worked for him in the property section and who signed the receipt for the evidence. Crowder transported the evidence to and from the state laboratory, and the receipt for the evidence was signed by an employee working at the laboratory. The evidence was held in a secure locker until trial when Crowder transported it to the court. He further identified the package in court, noting that it matched the condition of the one he took to the lab and contained the same identification labels. Based on this evidence, unrebutted by any evidence suggesting tampering or commingling, the trial court properly concluded that the chain of custody was established with reasonable certainty. Brown v. Commonwealth, 21 Va. App. 552, 556, 466 S.E.2d 116, 118 (1996).

Because we find that the trial court did not err in finding that the Commonwealth established a chain of custody, we affirm Smith's conviction.

Affirmed.