COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Haley and Beales
Argued at Alexandria, Virginia


DARREN NATHANIEL DAVIS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1291-09-4                   JUDGE RANDOLPH A. BEALES
                                                          JULY 13, 2010

COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                         Mary Grace O'Brien, Judge

          John V. Notarianni (Velasquez & Associates, on brief), for
          appellant.

          Donald E. Jeffrey, III, Assistant Attorney General (Kenneth T.
          Cuccinelli, II, Attorney General, on brief), for appellee.


        Darren Nathaniel Davis (appellant) was convicted by the trial court without a jury of being a

felon in possession of a firearm pursuant to Code § 18.2-308.2 and was sentenced to five years of

incarceration with two years and six months of that time suspended.[1]  He appeals this decision,

arguing that the trial court erred in admitting into evidence the audio recording of a telephone

conversation that he made from jail and that the trial court erred in finding that the evidence was

sufficient to prove that he was in constructive possession of the firearm.[2]  After reviewing the

record in this case, we find the trial court did not err, and we affirm appellant's conviction.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Appellant was indicted on other, related charges, but he was tried separately on the
firearm charge, which is the only conviction before us in this appeal.

        [2] This Court granted appellant's petition for appeal on three questions presented.  During
oral argument before this Court, appellant's counsel withdrew the third question, which he
conceded was essentially dependent upon resolution of the first question presented.

## I. BACKGROUND[3]

On February 22, 2007, the police arrested appellant on an outstanding warrant after he came out of an apartment in a building located on Gambril Drive in Gainesville. The police did not see which apartment he had exited prior to his arrest. During a search incident to his arrest, the police found $4,697 in cash in appellant's pocket. Appellant was then taken to the Adult Detention Center. The police proceeded to execute a search warrant at Apartment 31 of the building that appellant had exited.

During their search, the police recovered several items (drugs, a significant amount of cash, and a scale for drug distribution) in the master bedroom and the closet between the master bedroom and its bathroom. In addition, on a shelf in the closet, inside a shoebox, the police found a loaded .40 caliber firearm with an obliterated serial number. They also found photographs of appellant in a box in the closet. In the drawers of an end table in the master bedroom, the police recovered a W-2 listing Apartment 31 as appellant's address, a receipt from an animal clinic that listed a different address for appellant, a holster for a firearm, and ammunition for a .40 caliber firearm. Items belonging to appellant's girlfriend (the mother of his child) were also found in the master bedroom and the closet, including a document that listed her address as Apartment 31. Baby clothes were found in the closet. Inside a child's blue hat, the police found two ammunition magazines for a .40 caliber firearm. Money folded in a manner that indicated it was connected to drug distribution was found in a "baby bag" just inside the door of the master bedroom. A separate bedroom appeared to belong to appellant's father.

Detective Michael Fernald testified at trial that he asked the officers in charge of telephone recordings at the Adult Detention Center to provide him with copies of any telephone

---

[3] The Commonwealth proved that appellant had a prior felony conviction, and appellant does not contest on appeal the trial court's finding that he was convicted of a felony prior to the discovery of the firearm by the police.

calls made by appellant while he was in jail after his arrest on February 22, 2007.  Detective

Fernald testified that "they provided me digital copies of those telephone calls" and that one of

the voices on the recording that the Commonwealth intended to introduce into evidence was

definitely appellant's voice.  Detective Fernald did not testify that he overheard the original

conversation nor did the Commonwealth present evidence regarding the creation of the audio

recording of one phone call that was then offered into evidence.

Appellant objected to the trial court accepting the audio recording of the phone call into

evidence, arguing that neither the "custodian of records" nor the person who created the disc

containing the recorded conversation had testified about the recording's authenticity.  Appellant

claimed the Commonwealth still needed to prove "the chain of custody."[4]  The Commonwealth

argued that any question about the chain of custody would go to the weight to be given the

evidence – not to its actual admissibility – and that a sufficient foundation for the recording was

established.  The trial court overruled the objection and accepted the recording into evidence.

The recording is of one thirty-minute telephone call made by appellant from the Adult

Detention Center to "Mimi."  During their conversation, Mimi calls other people to "three-way"

them into the telephone conversation with appellant, including appellant's mother.  At the

beginning of the recording, a voice informs appellant and Mimi that the conversation may be

recorded and acknowledges that this telephone call originates from the Adult Detention Center.

Detective Fernald identified this part of the call as a "recording that is played [in] every phone

[call] that is made out of the Adult Detention Center."

---

[4] Appellant also objected to the detective's assertion that he knew appellant's voice, but this objection is not the subject of a question presented in this appeal.  The trial court in reaching its decision clearly accepted the detective's testimony that one of the voices belonged to appellant.  However, no testimony was presented regarding the other voices heard in the recording or the circumstances under which the recording was created.

- 3 -

On the recording, appellant initially tells Mimi that "nothing" was in his father's apartment and that "we" did not live there. However, he then essentially admits that he knows that $8,500 and "green" are in the home. He also acknowledged that a gun was in the apartment, but claims that the firearm belonged to "Josh," his cousin, and that the firearm is legal because it is registered to Josh. At some point, appellant indicates that Josh lives in the apartment, but he also claims that Josh should not leave his gun in the apartment. Appellant then admits, "That's all our shit," apparently referring to the items taken during the search, yet he also indicates that the money belonged to someone else. Appellant describes his arrest as taking place after he left the apartment, and then the police obtained a search warrant and returned to the house to search it. Appellant and his mother discuss the arrest of appellant's girlfriend. The recording stops after a voice gives three separate warnings that the call will be terminated.

Appellant argued to the trial court that several people occupied the apartment and that no fingerprints or DNA linked him to the firearm. He acknowledged that his statements during the telephone call proved that he knew the gun was in the apartment, but claimed the Commonwealth did not prove that he had "ever personally exercised dominion and control over that firearm." The Commonwealth argued that the evidence proved appellant constructively possessed the firearm. The trial court found appellant had constructive possession of the firearm, which might have been joint possession with Josh or other people living in the apartment.

## II. ADMISSIBILITY OF THE AUDIO RECORDING

Appellant argues that the Commonwealth did not lay a complete foundation for admission of the recording of the telephone conversation because the prosecutor did not establish

the "chain of custody" for the recording. Therefore, he contends, the trial court erred in admitting the recording.[5]

When reviewing questions of the admissibility of evidence, this Court considers whether the trial court abused its discretion as a matter of law. See Noll v. Rahal, 219 Va. 795, 801, 250 S.E.2d 741, 745 (1979).

> [W]e do not review such decisions *de novo*. "Given the 'broad discretion' of a trial judge over evidentiary matters, we apply a deferential abuse-of-discretion standard of appellate review." Seaton v. Commonwealth, 42 Va. App. 739, 752, 595 S.E.2d 9, 15 (2004) (citation omitted). This standard, if nothing else, means that the trial judge's "ruling will not be reversed simply because an appellate court disagrees." Henry J. Friendly, Indiscretion about Discretion, 31 Emory L.J. 747, 754 (1982). Only when reasonable jurists could not differ can we say an abuse of discretion has occurred.

Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, aff'd, 45 Va. App. 811, 613 S.E.2d 870 (2005) (en banc). "Also, the party objecting to the admission of the evidence [on appeal] has the burden of proving that the trial court erred." Jeter v. Commonwealth, 44 Va. App. 733, 737, 607 S.E.2d 734, 735 (2005).

To prove the chain of custody for a piece of evidence,

> the proponent of the evidence must show "'with reasonable certainty that the item [has] not been altered, substituted, or contaminated prior to analysis, in any way that would affect the results of the analysis.'" Crews v. Commonwealth, 18 Va. App. 115, 119, 442 S.E.2d 407, 409 (1994)). Although "[t]he Commonwealth is not required 'to exclude every conceivable possibility of substitution, alteration or tampering,'" Alvarez v. Commonwealth, 24 Va. App. 768, 776, 485 S.E.2d 646, 650 (1997), it must be able to "account for every 'vital link in the chain of possession.'" Id. at 777, 485 S.E.2d at 650.

---

[5] The Commonwealth argues that, even if the trial court erred in admitting the evidence, any error was harmless. However, as the trial court explicitly relied on this evidence in discussing the conviction, and as we find the evidence was properly admitted, we do not need to address this argument.

Id. at 737, 607 S.E.2d at 736-37 (some citations omitted). Appellant contends that the Commonwealth did not establish "with reasonable certainty" that the recording remained unaltered from the original recording, citing Witt v. Commonwealth, 15 Va. App. 215, 220, 422 S.E.2d 465, 469 (1992), in which the witness discussed how the original recording was duplicated to create the evidence presented at trial.[6]

Unlike the evidence presented to the trial court in Witt, Detective Fernald's testimony did not include a description of the creation of the duplicate recording heard by the trial court here. However, the detective's testimony and the recording itself provided a sufficient foundation for the trial court to admit the recording into evidence. See United States v. Haldeman, 559 F.2d 31, 107 (D.C. Cir. 1976) (per curiam) (noting that evidence used to establish, as "'a matter of reasonable probability,'" that a tape recording is an accurate representation of a conversation can be "circumstantial or direct, real or testimonial, and need not conform to any particular model" (quoting Gass v. United States, 416 F.2d 767, 770 (D.C. Cir. 1969))).

The Commonwealth presented sufficient evidence for the trial court to determine "with reasonable certainty" that no one "accidentally or intentionally" substituted, altered, or tampered with the recording, even though the entire chain of events leading to the creation of the recording offered into evidence was not presented to the trial court. Reedy v. Commonwealth, 9 Va. App. 386, 392, 388 S.E.2d 650, 653 (1990). The evidence presented by the Commonwealth proved that Detective Fernald obtained the recording from the Adult Detention Center, the place where appellant was incarcerated. The statement at the beginning of the recording matched the warning

---

[6] During oral argument, the Commonwealth cited Washington v. Commonwealth, 228 Va. 535, 323 S.E.2d 577 (1984), to argue that the prosecutor did not need to prove the chain of custody for this recording because no scientific test was performed on the recording. Although the Commonwealth's point is correct, appellant's specific argument at trial and on appeal is not a standard "chain of custody" argument as discussed in Washington, but instead is perhaps more appropriately labeled as an "authentication" argument, which can involve chain of custody issues.

that callers hear when making telephone calls from the Adult Detention Center. Appellant's voice is identified as one of the voices heard in the recording. See Harlow v. Commonwealth, 204 Va. 385, 388-89, 131 S.E.2d 293, 296 (1963) (finding that a telegram is not self-authenticating where the *only* evidence identifying Harlow as the sender is "the writing on its face purports to be from the sender"). The recorded conversation between appellant and other people involved discussions of the evidence found in Apartment 31, appellant's arrest on an outstanding warrant, his girlfriend's arrest, and concern about their child. The recording has no odd glitches or pauses that are unexplained by the context. The call ends exactly thirty minutes after it began – after a mechanical voice has given the participants three warnings that the telephone call will be ending shortly.

In the face of all this evidence, appellant does not point to any evidence in the record that suggests someone tampered with the recording. See Reedy, 9 Va. App. at 392, 388 S.E.2d at 653.

Based on all the evidence, we cannot find that the trial court erred when it overruled appellant's objection to the audio recording and found that the Commonwealth had established a sufficient foundation for the admissibility of the recording. We find that the trial court did not abuse its discretion when it admitted the audio recording into evidence. See Thomas, 44 Va. App. at 753, 607 S.E.2d at 743.

### III. CONSTRUCTIVE POSSESSION

Appellant claims the evidence was not sufficient to prove that he ever exercised dominion and control over the firearm that was found in the apartment. Therefore, he argues, his conviction should be overturned.

When considering whether the evidence was sufficient to support a trial court's finding of guilt, "an appellate court must review the evidence in the light most favorable to the prevailing

party at trial and consider any reasonable inferences from the facts proved." Thomas v. Commonwealth, 279 Va. 131, 155-56, 688 S.E.2d 220, 234 (2010); Traverso v. Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). In addition, when reviewing a sufficiency question, this Court

> does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (citation omitted and emphasis in original).

Cooper v. Commonwealth, 54 Va. App. 558, 572, 680 S.E.2d 361, 368 (2009) (some citations omitted).

To prove constructive possession of a firearm,

> the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was *subject to* his dominion and control. While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm or ownership or occupancy of the premises where the firearm is found, these are circumstances probative of possession and may be considered as factors in determining whether the defendant possessed the firearm. Furthermore, the Commonwealth does not have to prove that possession was exclusive.

Rawls v. Commonwealth, 272 Va. 334, 349-50, 634 S.E.2d 697, 705 (2006) (citations omitted) (emphasis added). Appellant claims that the Commonwealth needed to prove that he *actually* exercised dominion and control over the firearm.

If appellant's theory of constructive possession were correct, it would effectively undermine the principle of constructive possession because the Commonwealth would have to prove that *at some point* a defendant *actually* possessed the firearm instead of proving that the firearm was *subject to* his dominion and control, i.e., *constructively* in his possession. Therefore,

- 8 -

appellant's interpretation of the law on constructive possession cannot be correct. In addition to proving that appellant was aware of the firearm, the Commonwealth needed to prove only that appellant had the ability to control the firearm. Id.

Here, the firearm was clearly accessible to appellant, and he knew it was there. The firearm was found in the closet of a bedroom in which several items belonging to appellant, his girlfriend, and his child were also found, allowing the trial court to infer that appellant was staying in the apartment. A document found in a drawer listed the apartment as appellant's residence. A holster and ammunition for the firearm were found in a drawer of an end table beside the bed. Two magazines for the firearm were found in a child's hat in the bedroom closet. Clearly, items related to the firearm were mixed in with items belonging to appellant, his girlfriend, and their child, allowing the trial court to infer that appellant had dominion and control over the firearm.

Appellant admitted during the recorded conversation that he knew about the gun, but claimed it belonged to Josh and that it was "legal" because Josh had registered it. However, the trial court did not have to believe that it belonged to Josh. See Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993) (noting that "the fact finder is not required to believe all aspects of a defendant's statement or testimony; the judge or jury may reject that which it finds implausible, but accept other parts which it finds to be believable"). In addition, even if the firearm belonged to Josh, the trial court could still find that the weapon was jointly in the possession of appellant and Josh.

Examining the evidence in the light most favorable to the Commonwealth, as we must since the Commonwealth prevailed below, see Thomas, 279 Va. at 155-56, 688 S.E.2d at 234, we find the evidence in this record is sufficient for a rational factfinder to conclude that appellant

constructively possessed the firearm.  Therefore, the trial court did not err in convicting appellant.

## IV.  CONCLUSION

We find that the trial court did not abuse its discretion when it admitted the audio recording into evidence.  We also find that the evidence was sufficient to support the trial court's finding that appellant constructively possessed the firearm found in the apartment.  Therefore, we affirm his conviction of being a felon in possession of a firearm.

<u>Affirmed.</u>